SWEETZER vs. MEAD.

Court, requiring agreements between parties, or their attorneys, to be in writing.

Mr. *Lothrop*, in reply claimed that where, as in this case, there had been a misunderstanding between parties, it was an ordinary exercise of the power of the Court to relieve a party who had acted in good faith, against the consequences.*

———•-•-•———

### Frederick Sweetzer and Others vs. John C. Mead and Nelson B. Nye.

When a cause is tried in the Circuit Court without a jury, and no exceptions are taken to the legal rulings upon which the Court arrives at its application of the facts and evidence, and no case, made under the statute, is brought before the Supreme Court, that Court is not at liberty, when the case is before it by writ of error, to examine into the propriety of ⸢anything in the decision of the Court below, based upon its finding of facts, but must take its conclusions as founded upon the law and evidence.

Where plaintiffs claimed personal property under a chattel mortgage, and defendants justified under executions and attachment against the mortgagors, who were partners, and the evidence tended to show that there was no manual delivery of the mortgage to plaintiffs (who did not reside in the State), but that the mortgagors were indebted to plaintiffs in more than the amount of the mortgage, and plaintiffs offered in evidence a letter to them from one of the mortgagors, in the name of the firm, written some time before the levy of the executions and attachment, informing them of the execution of the mortgage; — *Held*, That such letter was proper evidence, as tending, in some degree, to prove that the true intent of the mortgage was to secure an actual indebtedness to plaintiffs, and not to make a mere cover of the transaction.

A chattel mortgage need not be under seal, and a partner can make it for the copartnership. If he does so, and adds a seal, the seal does not take away his authority, or in any way change the force of the instrument.

Where, in replevin against two, the Court finds that each of the defendants has an independent lien, to a specified amount, on the property in controversy, it is erroneous to render a joint judgment in their favor, for the value of the property.

*Heard May 7th. Decided May 20th.*

* See *Wager vs. Stickle*, 3 *Paige*, 407.

SWEETZER *vs.* MEAD.

Error to Washtenaw Circuit.

The case, so far as passed upon by the Court, is fully stated in the opinion.

*E. W. Morgan*, for plaintiffs in error.

*H. J. Beakes* and *O. Hawkins*, for defendants in error.

CAMPBELL J.:

The plaintiffs brought replevin against Mead and Nye for certain goods. The plaintiffs claimed title by virtue of a chattel mortgage, executed by one A. G. Scott in the name of the firm of E. G. Scott & Co., of which he was a member, executed December 26th, 1853, and filed on that day in the town clerk's office at Ypsilanti, where the firm did business; and filed also, subsequently, on the 23d day of January, 1854, in the clerk's office at Ann Arbor, where also they did business. The mortgage was under seal. The defendant Mead held the property, by virtue of certain justice's executions, issued and levied on the 16th day of March, 1854, whereby the property was seized on claims against Scott & Co. These judgments amounted to about $1000. The defendant Nye claimed to hold the same property by levy of a certain Circuit Court writ of attachment against Scott & Co., levied after Mead had seized the goods.

There was testimony in the case tending to show that no manual delivery of the mortgage was made to the plaintiff, who resided out of the State. There was testimony showing an indebtedness from Scott & Co. to plaintiffs, past due at the date of the mortgage, for nearly its amount; and an additional indebtedness, nearly due, for as much more. The mortgage provided that Scott & Co. might retain possession of the goods until demanded by the plaintiff; and they were in possession when the levies were made.

The Court tried the cause without a jury, and found a special property in Mead to the amount of $1020, under his levy, and in Nye, under his attachment, to the amount of

$1300, and gave judgment, on this finding, in favor of them, jointly, for $1709.51, the value of the goods as found.

A writ of error was taken, bringing the record, and also the exceptions taken on the trial, into this Court for review.

We were asked to pass upon the facts in the original and amended finding upon which the decision of the Court was based; but as no exception was taken to the legal rulings upon which the Court arrived at its application of the facts and evidence, and as no case made under the statute has been brought up, we are not at liberty to examine the propriety of anything in that decision; but must take its conclusions as founded upon the law and the evidence. We can only regard, therefore, the exceptions taken on the trial, and the further question whether the judgment rendered by the Circuit Court conforms to the judge's finding of property.

The plaintiffs offered, on the trial, to show that on the 2d day of January, 1854, Scott & Co. sent to the plaintiffs the following letter: "Ann Arbor, January 2d, 1854. Messrs. Sweetzer, Gooking & Co. Gent.: We were unable to meet our paper at maturity, and have executed a chattel mortgage of one thousand dollars on our stock of goods, for your benefit. Respectfully, yours, E. G. SCOTT & Co." Which letter was proved to have been written by E. G. Scott, the partner who resided at Ann Arbor. This was offered to prove that the mortgage was founded upon a good consideration, and that it was not fraudulent as against the creditors of E. G. Scott & Co. The Court rejected the testimony, and the plaintiffs excepted.

We think this testimony should have been received. The question of fraud is one which depends upon a great variety of circumstances. The fact that a chattel mortgage had been made by Scott & Co. and placed on record, without any notification to the mortgagees of its existence, would, we think, be very fairly regarded as strong evidence of a fraudulent intent, as it might enable him to keep off other creditors by an instrument which was not fulfilling its proper pur-

pose towards those apparently interested.   They might thus
gain time to carry out any fraudulent designs they might
entertain concerning the disposal of their goods, without giv-
ing the plaintiffs the means of protecting themselves.   The
general creditors would thus be directly defrauded by an un-
lawful use of the plaintiffs' names in a matter of which they
were ignorant.   By showing that the plaintiffs were notified,
and thus enabled to assert their rights in the mortgage, the
inference would be raised (with more or less force, according
to the other facts in the case), that the mortgage was in-
tended as a real one, and not a mere pretence.   Evidence
having been introduced of an actual indebtedness to the
plaintiffs, the evidence of this letter would tend to prove
that the true intent of the mortgage was to secure this, and
not to make a mere cover of the transaction.   A debtor has
a right to secure any creditor, at his option; and if a security
is given with the intent that it shall be used for that pur-
pose, it is valid against other creditors, unless some other
infirmity attaches to it.   The *intent* with which the debtor
gives it, is the most important matter to be got at in all
cases where fraud is imputed; and we think this letter has a
bearing on that intent.

The objection that a seal appears on the instrument, and
that, therefore, without showing the acts of all the three
members of Scott & Co., the letter can have no weight, has
no force.   Even if the mortgage were deemed to require a
ratification from all, it does not follow that this must be
shown by a simultaneous act.   The consent of one at one
time, and of another at another time, would suffice.   But the
existence of a seal neither adds to, nor detracts from, the
validity of a partner's signing the name of the firm.   A chat-
tel mortgage need not be under seal, and a partner can
make it.   If he does so, and adds a seal, that seal does not
take away his authority, or in any way change the force of
the instrument. — 1 *Pars. on Cont.* 94; *Milton vs. Mosher*, 7
*Metc.* 244.

SWEETZER vs. MEAD.

We think, therefore, that this evidence was improperly excluded, and for this reason the judgment must be reversed.

There is a further defect in the record, which is of too much practical importance to be passed by, and we therefore refer to it, although the error already considered entitles the plaintiffs in error to a reversal. The Court found a special property in defendants. The statute in relation to actions of replevin (2 *Comp. L.* § 5033), contains the following provisions: "When either of the parties to an action of replevin, at the time of the commencement of the suit, shall have only a lien upon, or special property in, the goods and chattels described in the writ, and is not the general owner thereof, that fact may be proved on the trial, and the jury shall find according to such fact by their verdict, and the Court shall thereupon render such judgment as shall be just between the parties."

Where a case is tried by the Court, the judge's finding of property may, like the jury's, be either general for the plaintiff or defendant, or of a special property; and the judgment is to conform to the justice of the case upon that finding.

In this case, the finding is not that the defendants, jointly, have a special property, but that each has an independent lien for separate amounts, and under separate claims. It is very clear that such facts will not support a joint judgment. We are not at liberty, as the case stands, to go behind the conclusion, and inquire how such facts can exist. But, certainly, having no joint right, the Court could not properly give them a joint remedy in this shape. Nothing but a general finding, or a joint special property, could entitle them to a joint judgment. Such is not a judgment that is "just between the parties."

All the Justices concurred.

*Judgment reversed, and new trial ordered.*