## Octave Trudo v. LeGrand Anderson.

On the trial in the Circuit Court without a jury, rulings of law which might affect the finding of facts — as upon the admission or rejection of evidence — must be brought before the Supreme Court by exceptions, as upon a trial before a jury. But when the only question is whether the facts found support the judgment, the finding of facts is to be treated as a special verdict, and no exception is necessary, as the record itself presents the question as fully as it could be presented by exceptions.

A Judge's finding of facts must set forth the *facts found*, and not merely the evidence tending to prove them.

Where an objection was made to an assignment of errors which was purely technical, and it was evident the defendant in error could not have been misled, the Court permitted an amendment to the assignment to be made at the hearing.

An authority in an agent to *sell* property, does not authorize him to *exchange* it for other property.

TRUDO v. ANDERSON.

An agent can not ratify an act done by himself beyond the scope of his authority, so as to bind his principal.

Where one's property is disposed of without authority, by the person having it in charge, the owner may bring replevin therefor without a previous demand.

And he may do this notwithstanding the property is in the hands of one who has bought in good faith, and without notice of the title of the real owner.

*Heard May 21st and 22d.    Decided July 17th.*

Error to Van Buren Circuit.

Trudo replevied of Anderson a horse. The case was tried by the Circuit Judge, without a jury, and the following is the finding:

" 1st. That the plaintiff was, in the month of July, 1860, in Canada West, the owner of the horse in question; that for several years before that time the plaintiff had been a laborer in the employ of one John McAlister, in Canada West, and left the horse upon the premises of said John McAlister, in Canada West, to be sold by said McAlister; that, shortly after this, the said McAlister left Canada West and repaired to the western part of the State of Michigan on business, without having sold or authorized the sale of the horse; that, shortly after McAlister left Canada West for western Michigan, one Samuel Miller, who was in McAlister's employ, and left on his premises in Canada, exchanged the horse in question, without authority, for another horse; that, in four or five days after this, McAlister returned to his place in Canada West, and was informed of the exchange of horses, and declared to Miller that he suspected the horse received in exchange was a stolen horse; a few days after McAlister returned, he bargained the horse received in exchange away to one Patrick Gleason, on the agreement and understanding that, if no one came for the horse as a stolen horse, he was to belong to Gleason; that said horse, so received in exchange for the horse in question, was then delivered to said Gleason; that, within a short time thereafter, one Daniel Rogers, of Van Buren county, Michigan, called on said McAlister and claimed that the horse so as aforesaid received by Miller and transferred by

McAlister to Gleason, was stolen, and that he was in pursuit of the horse, and exhibited an advertisement and description of the horse, and threatened to replevy the horse; that said McAlister then informed said Rogers that if the latter could show his authority, he, said McAlister, would give up such horse; that Deputy Marshal Moore, of Detroit, was referred to, who informed said McAlister that Rogers was "*all right;*" that said horse was then obtained from said Gleason and delivered up to said Rogers, and the money received of Gleason for the horse refunded to him by McAlister.

"2d. The defendant resided with his son, LeGrand R. Anderson, in Van Buren county, and an old man by the name of Herrick had lived about five or six years about three miles from defendant's; that a young man, representing himself as the son of Herrick, called on defendant's son with the horse in question, and represented to defendant's son, when defendant was present, that he had bought a piece of land of Eastman or Spencer, of Dowagiac, near the west line of Olean and east line of Wayne townships, and wished to obtain thirty dollars to make the first payment; that defendant's son referred him to defendant, and that defendant let him have thirty dollars upon the agreement that the horse in question should be pledged to defendant for the re-payment of the thirty dollars in five days, and that if the money was not paid in five days the horse should belong to defendant, and that, accordingly, the horse was delivered to defendant, and that said money has not, nor has any part of it been paid.

"3d. That at or before the time of the payment of said thirty dollars by defendant and the delivery of the horse to him, the defendant was not informed nor had any knowledge that there was any question about the title to said horse, but that within two or three days after, the defendant was informed there was a question about the title to said horse, and was informed that Dan. Rogers asserted

that the horse had been [obtained by young Herrick in exchange for a stolen horse; that, after being so informed, the defendant rode the horse several miles to the premises of one Benjamin A. Murdock, the son-in-law of defendant, and there left him; that Murdock told defendant that the horse was too small for him (defendant) to ride, and that he take his (Murdock's) horse to ride home, and that he (Murdock) would turn the horse in question in his (Murdock's) pasture; that defendant then stated that the horse in question would be a good one for his (Murdock's) girls to ride, and he would leave it, and the defendant then left the horse in question with Murdock; that, when the horse was so left at Murdocks, five days had passed from the time of the delivery by Herrick.

"4th. That said horse was at Murdock's when taken on the writ, and that after he was taken on the writ, and before service on defendant, McAlister demanded the horse as his; that the defendant refused to yield up the horse on the demand unless paid the amount he had advanced, and that McAlister refused to pay so much; that no other demand was made; that the horse was worth seventy-five dollars, and that the value of the use is fifty cents a day.

"The conclusion of law upon these facts I find as follows:

"1st. The acts and sayings of McAlister, and Miller, and Gleason, under the authority given by the plaintiff, passed the title to the horse in question for the money received of Gleason, unless the horse received by Miller was stolen, whereby the horse in question was obtained by fraud, or unless the plaintiff disaffirmed the transaction, on the ground of *want of authority in McAlister to transfer the horse in question through the medium of an exchange;* and the case wholly fails to show, by any sufficient legal evidence, that the horse received by Miller was stolen; and there is nothing in the case to show that the plaintiff disaffirmed the transaction, on the ground of want of authority of McAlister.

TRUDO v. ANDERSON.

"2d. That, upon the facts, a demand by the plaintiff before action was indispensible.

"3d. That the facts do not establish a case of general ownership or special property of the plaintiff in the horse in question."

Judgment upon this finding having been rendered for defendant, plaintiff sued out a writ of error, and assigned for error specially "that the written finding of facts and law by the Circuit Judge in said cause does not support the said judgment entered in said cause, and that upon the said finding judgment was entered in favor of the said LeGrand Anderson, whereas it ought to have been entered for the said Octave Trudo."

*Douglass & Andrews,* for plaintiff in error:

The conditional sale, made by McAlister, of the horse received by his servant in exchange for the horse of the plaintiff, seems to have been stated by the Circuit Judge as evidence of a ratification, by the plaintiff, of the exchange of horses, but it is clearly incompetent for that purpose, as it does not appear that McAlister had himself any authority to make or ratify such a contract, and, at most, it is but matter of evidence, which is immaterial in a finding or special verdict.—*Delafield v. Illinois,* 26 *Wend.* 227.

The exchange made by McAlister's servant, therefore, being neither authorized nor affirmed by the plaintiff, did not pass the title to the plaintiff's horse; and the question arises, whether the plaintiff, whose chattel has been unlawfully taken from him, can, in an action of replevin, recover such chattel from the possession of a *bona fide* purchaser, without proof that he demanded the property of the purchaser before the commencement of the suit.

No such condition precedent to the bringing of a suit is required by our statute, which provides the remedy by replevin "whenever any goods or chattels shall have been unlawfully taken, or unlawfully detained."—*Comp. L.* § 5005.

10 MICH.—X.

TRUDO v. ANDERSON.

That the taking by the defendant, in this case, was unlawful, there can be no doubt. Any unauthorized inter- meddling with the goods of another is unlawful, and no court has ever held that honesty of intention, or *bona fide* payment of value, would relieve such an act from its unlaw- ful character.—2 *Greenl. Ev.* § 622. And we are unable to perceive upon what principle the plaintiff in this case is called upon to prove, not only that the chattel is his, and that it was unlawfully taken by the defendant, which is all that is required by the statute; but, also, that it was sub- sequently unlawfully detained. For it is only to show an unlawful retention of a possession, lawfully acquired, that proof of demand and refusal could be relevant at all. In replevin, as in trover, demand and refusal constitute mat- ter of evidence merely; and not a condition precedent.— 1 *Chit. Pl.* (11 *Am. Ed*) 147, 160; 2 *Greenl. Ev.* § 644; 9 *Bing.* 475; 5 *B. & Ald.* 847.

And courts have accordingly sustained the action of replevin in cases similar to the present, and without pre- vious demand. — 8 *Me.* 38; 11 *Me.* 28; 19 *Me.* 281; 17 *Ark.* 172; 6 *Binn.* 2; 1 *Hemp.* 10.

So trespass, to sustain which there must be, not merely a conversion, or an unlawful detention, but an unlawful taking, will lie in a case like the present. — 1 *Cush.* 536; 5 *Mass.* 341; 38 *Me.* 80.

So, a taking of chattels, under circumstances like the present, is held to be unlawful, and of itself, without any subsequent demand, sufficient proof of a conversion for which trover will lie. — 3 *Bing.* 603; 3 *C. & P.* 99; 4 *C. & P.* 400; 6 *East,* 538; 13 *N. H.* 494; 2 *Stark.* 306; 11 *Cush.* 11; 9 *Bing.* 471; 10 *Wend.* 390; 2 *Dowl. & Ry.* 1.

Some decisions in the State of New York are undoubt- edly opposed to these views; but they can be sustained on neither principle nor authority. They are based partly upon the exploded doctrine that the taking is not tortious if the defendant acquired the possession of the property

by peaceable delivery from the first wrong-doer, and partly upon the notion that it would be unjust to subject the *bona fide* purchaser of stolen property to an action until an opportunity had been given him to make restitution.

All the cases admit, that if goods are forcibly taken from a trespasser by one without title, the true owner may bring trespass against either. Why the remedies of the rightful owner should depend upon a transaction between two trespassers, with which transaction he has no connection, and of which he could, ordinarily, have no knowledge, it is difficult to conceive.

*E. C. Hinsdale* and *C. A. Kent*, for defendant in error:

1. There is nothing presented by this case which can be reviewed by this Court. No exceptions were taken to the rulings of law embodied in the finding, and this Court will not now enquire into the propriety of anything in that decision.—*Rule* 90 *of C. C*; *Sweetzer v. Mead*, 5 *Mich.* 107.

In a more recent case, where an exception was taken to the conclusion of the Judge's finding, the Court reviewed the whole case.— *Wood v. La Rue*, 9 *Mich.* 161.

The case in 5 *Mich.*, above cited, shows that in this case. the Court will only consider whether the judgment rendered by the Circuit Court conforms to the Judge's finding, but the correctness of the judgment upon the conclusions of law will scarcely be seriously questioned.

2. Even if the Court would review the case upon error without exception, it would only consider defects or errors specially assigned.

To say that "the written finding of facts *and law* does not support the judgment," can certainly mean no more than that the judge's conclusion of law upon the facts found does not warrant the judgment; and we submit, that this "written finding of law" upon the facts *does* "support the judgment.

3. Should the Court examine and pass upon the facts

TRUDO v. ANDERSON.

found by this case, we submit that they justify the judgment. It is quite clear that, if the plaintiff had himself made the trades, which are shown in this case, he could have no relief against the defendant, who is a *bona fide* holder, even though the horse received upon the exchange were shown to have been stolen.

But it is not shown, nor is there evidence from which it can be inferred, that the horse received by the plaintiff's agent and sold by him, was stolen, and the only possible ground upon which the plaintiff could recover, is that the agent had exceeded his authority, and that the plaintiff had not acquiesced in his acts.

While it may be true, that an authority to *sell* does not, when strictly applied, authorize an exchange, yet we submit that this is not a case to be governed by the technical meaning of the word "*sell*," as applied to the authority given to factors. The relations of the principal and agent, in this case—the latter as the employer of the former for years—justifies the assumption, that the plaintiff, Trudo, having confidence in the judgment and business capacities of McAllister, requested him to dispose of the horse in such a manner as he might deem best for his interest. The agent did dispose of the horse, and as the result of his doings received the money for him through the medium of the exchange.

We submit, too, that the acquiescence of the plaintiff in his agent's acts, amounted to a ratification of them. No disaffirmance is expressed by him, and, for aught that appears, he had full opportunity to disaffirm. — *Story on Agency*, §§ 253, 255, 256; 14 *S. & R.* 27; 12 *Johns.* 300; 6 *McLean*, 103.

4. The defendant held the horse in good faith, and a demand was necessary, before suit, in order to substantiate that defendant unlawfully held the horse.—3 *Hill*, 348; 8 *Barb.* 333; 6 *Johns.* 44; 4 *E. D. Smith*, 357; 13 *Ill.* 315; 3 *Eng.* (*Ark.*) 564; 4 *Harr.* 171; 7 *Gray*, 155; 6 *Ind.* 455; 5 *Sandf. S. C.* 161; 23 *Ill.* 427.

TRUDO v. ANDERSON.

CHRISTIANCY J.:

It is insisted by the counsel for the defendant in error that, as no exception was taken in the Court below to the rulings of law embraced in the finding, this Court will not now inquire into the propriety of any thing in the decision.

Doubtless any ruling of law which might affect the finding of facts, as upon the admission or rejection of evidence, must be brought before the Court by exception, as upon a trial before a jury. Such ruling of law would, in the language of the 90th rule of the Circuit Courts, be "embodied in the finding of facts." But when the only question is whether the facts found support the judgment, the general conclusion of law from all the facts found can with no propriety be said to be embodied in the finding of facts, but is merely the result to be deduced from it: and in such case the finding of facts must, on principle as well as by the rule cited, be treated as a special verdict: and no exceptions are necessary, as the record itself presents the question as fully as it could be presented by exceptions. The object of the statute and of the rule was to give to the parties the same facilities for review in an appellate court, whether the trial at the Circuit should be by the Court or by a jury.

But it is urged that this decision is in conflict with the decision of this Court in *Sweetzer v. Mead*, 5 *Mich.* 109. There is no such conflict. By reference to the record and the briefs (neither of which appear in the report) it will be seen that there was a bill of exceptions setting out the evidence, to a small portion of which only exceptions were taken, as well as to the exclusion of other testimony offered. There was also a finding of facts by the Court, and an amendment to the finding; and we were asked to pass upon the whole evidence, which would, in effect, have been a review of the Judge's finding: and it was

held that we could, in such case, only regard the exceptions taken at the trial, and the further question, whether the judgment conformed to the finding: in other words, whether the facts found authorized the judgment given. The language of the opinion cited by counsel has no reference to the particular question here involved.

But it is further objected on behalf of the defendant in error, that the assignment of errors is not sufficient to raise the question, as upon a special verdict. The twelfth rule of this Court requires all assignments of error to be special. The only assignments in this case are, *first*, the general assignment, and, *second*, "that the written finding of facts and law by the Circuit Judge does not support the judgment." Technical accuracy would have required the assignment to be "that the finding of facts did not support the judgment." But on looking at the record and the assignment, we are satisfied such was the intention of the assignment, and that the defendant in error could not have been misled as to the question intended to be raised: and considering the objection as purely technical, we gave the plaintiff in error liberty to amend* or to have the record considered as amended. We must therefore consider the case upon the finding as upon special verdict.

The Court found as a fact that the plaintiff, in July 1860, was the owner of the horse in question; and to warrant the judgment in favor of the defendant, it must appear, *first*, that the property, or the plaintiff's right of possession, had been divested, or *second*, we must be satisfied that the Court below was right in holding that a demand of the property was necessary before the institution of the suit. To authorize the judgment on the first ground the Court must have found, as a fact, the ratification by the plaintiff of the exchange made by the servant of his

---

* By striking out the words "and law" in the special assignment of errors.

agent, and of the subsequent conditional sale by McAlister of the horse received in exchange; for the simple authority of McAlister to sell the horse for the plaintiff would not have authorized the exchange if made by McAlister himself; much less when made by his servant: and the conditional sale of the horse received in exchange could in no way bind the plaintiff, unless ratified and adopted by him. But while the finding sets forth the particular facts and circumstances in evidence with more particularity than necessary, and is therefore thus far more in the nature of evidence than of a finding of facts, it fails entirely to find directly the fact of ratification, or any fact or state of facts which would, in law, constitute such ratification. Certain facts are set forth in reference- to a conditional sale made by McAlister of the horse received by his servant in exchange for the plaintiff's horse: but these facts, though probably with others considered by the Judge as circumstances tending to the proof of ratification, cannot be treated as a finding of that fact by the Court. If admissible and sufficient to authorize the inference of ratification, they were certainly no more than mere evidence, and it was for him to draw the inference. A finding of facts should set forth the facts found, not merely the evidence tending to prove them. Upon a special verdict the Court can draw no mere inference of fact which the jury have failed to draw from the evidence. But we see nothing in this evidence which, without other facts not found, could even tend to the proof of ratification: as the plaintiff himself does not appear to have had any connection with the conditional sale, nor even to have been informed of it, either before or after the transaction. And an agent cannot ratify an act done by himself, or his servant beyond the scope of the agency, so as to bind the principal: otherwise an agent might enlarge his own powers to any extent without his principal's consent.

It remains only to inquire whether a demand was necessary

before bringing suit. This must, we think, depend upon the question whether the taking by the defendant was lawful. The finding of facts sufficiently shows that the original taking by the party with whom the exchange was made by McAlister's servant was unlawful and wrongful, whether the horse given in exchange was stolen or not: as the servant who made it had no shadow of authority, but was a mere stranger to the plaintiff. The plaintiff had not given to his agent, McAlister, any indicia of ownership, but the bare possession, to enable him as agent to sell the horse; but not even the possession was ever trusted by the plaintiff to the servant. The plaintiff therefore appears to have done no act, and to have been guilty of no negligence, calculated to mislead others, or to induce a belief that even McAlister (much less his servant) was the owner, more than generally happens in the ordinary case of leaving property in the hands of an agent for sale. Had the ordinary mode of doing such business required any particular safeguard for the protection of third persons, which he had omitted, or done any act calculated to impose upon them, and others had been prejudiced by such act or omission, the case might have been different: but in the absence of all such proof, the taking by the person who received the horse in exchange being unlawful, those who received the possession and claim through such wrongful taker, stand merely in his place, and can claim only in his right.

But the counsel for the defendant in error insists this principle does not apply to a purchaser in good faith and without notice, and that to render the defendant liable to a suit for the property, a previous demand should have been made. This exception to the principle just stated seems now to be established in the State of New York, as the cases cited by defendant's counsel sufficiently show; and the authority of these cases has been recently followed in Indiana: — *Wood v. Cohen*, 6 *Ind.* 455. So far as the

New York rule does not depend upon the distinction between replevin in the cepit and the detinet, it seems to rest upon the principle that "a man who innocently purchases property supposing he should acquire a good title, ought not to be subjected to an action until he has an opportunity to restore the goods to the true owner."

The apparent equity of this rule would, on first view, seem to recommend it. But upon a careful examination its justice, as a rule of law, will be found to be more apparent than real, as it must depend upon the peculiar circumstances of each particular case: and its injustice would be manifest if applied to a case where a previous demand would impose a serious inconvenience upon the plaintiff. It is not easy to give a satisfactory reason why the true owner, who has been guilty of no wrong or negligence, should be prejudiced by a transaction between the wrongful taker of his property and a third person, or how such transaction can impose upon him a new obligation. In many cases a previous demand would impose upon the owner a serious inconvenience, and in some cases might be equivalent to a denial of his right; and "if he happen to find in whose possession his property lies, a demand will perhaps raise an alarm, and hurry both the wrong doer and the property beyond the plaintiff's reach."—*Per Cowen J.*, 3 *Hill*, 360. Why should the right of the plaintiff to recover his property be made to depend upon the good faith of the defendant, when that good faith is no defense against the plaintiff's right of property or possession when a previous demand has been made? The principle upon which the New York rule rests might properly have some weight with the Court upon a question of costs, where these are discretionary, or might justify the Legislature in refusing costs to the plaintiff where a previous demand could have been made without serious risk or inconvenience, and the suit has been brought without such demand. But we think

the principle of the rule can not properly be extended to the right of action.

We do not think the question of intent, or good faith, in a party receiving possession from a wrongful taker in such cases, and where the owner has been guilty of no wrong or negligence, can have any bearing upon the right of recovery in a civil suit for the property or its value; and such is clearly the weight of authority both in England and the United States.—(See *cases cited by counsel for plaintiff in error, and opinion of Cowen J. in Barrett v. Warren, 3 Hill, and cases cited*).

The taking in this case, as shown by the finding, was clearly a trespass, and would have constituted, of itself, a conversion in trover without proof of a demand and refusal. We can see no greater reason for a demand in an action of replevin under our statute. The New York Revised Statutes kept up, in the writ and declaration, the distinction between replevin in the cepit and that in the detinet: and this distinction seems to have been thought to have some bearing upon the question of a previous demand in such a case.— (See *Barrett v. Warren, above cited. See, also, Ingalls v. Bulkley, 13 Ill. 315*). It seems to have been thought that a defendant could not be said wrongfully to detain the property in such cases till he had refused to give it up on demand; and this is the ground taken by the defendant in error here. But the answer to this is, that our statute, so far as regards the form of action, recognizes no distinction between replevin for taking and that for detaining; but the action is, in form, in all cases for detaining only.— *Comp. L.* §§ 5010 and 5028. The declaration therefore will be supported, as well by proof of an unlawful or wrongful taking, as of a wrongful detention.

The judgment must be reversed, and a judgment entered in this Court for the plaintiff, for six cents damages and the costs of both courts.

The other Justices concurred.