## ROSUM v. HODGES *et al.*

1.  A party has no right to cross-examine a witness except as to the facts and circumstances connected with the matters stated in his direct examination.

2.  Whether, under Section 4603, Comp. Laws, providing that " the detriment caused by the wrongful conversion of personal property is presumed to be (1) the value of the property at the time of the conversion, with the interest from that time, or (2) where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party," etc., the plaintiff must be held to have elected to have his damages assessed under the first rule, by demanding in his complaint interest on the value of the property alleged to have been converted, is not decided; but where in such case the defendant has, without objection, admitted plaintiff's evidence going directly and specifically to the highest market value, such evidence being the only testimony as to damages. nothing occurring during the entire trial to suggest to the court that defendant disputes plaintiff's right to such measure, the court is justified in assuming that both parties agree to that rule of damages, and in instructing the jury accordingly.

3.  Where personal property is taken from the true owner tortiously, and by the wrong-doer sold to an innocent purchaser, the true owner, having been guilty of no wrong or negligence, may maintain an action for the recovery of the property or its value without previous demand.

(Syllabus by the Court.   Argued Apr. 5,1890.   Opinion filed Nov. 24. 1890.)

Appeal from district court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action for conversion of certain personal property: Judgment for plaintiff, defendant appeals.   Affirmed.

The material facts are stated in the opinion.

*Bailey, Davis* and *Lyon,* for appellants.

The plaintiff, by taking and retaining a benefit from Gerde's acts directly ratified them to that extent and confirmed the sale to that amount, and it was error for the court to deny the offer of defendant to prove those facts.   The transaction was in its nature indivisible, and a ratification of a part was a ratification of the whole: Comp. Laws, § 3973; Story on Agency, § 250; Mills v. Hoffman, 92 N. Y. 189; Seago v. Martin, 6, Heisk 380.   The simple act of the defendant in purchas-

ing the grain·did not of itself amount to a conversion, and it was incumbent therefore on plaintiff to show a demand. The instruction of the court that no demand was necessary was error, Gillet v. Roberts, 57 N. Y. 28; Delano v. Curtis, 7 Allen 470.

*H. Robinson* and *Winsor* and *Kittredge*, for respondent.

No demand is necessary before a plaintiff can maintain an action for the conversion of personal property even though the defendant came into possession of the property rightfully, Stanley v. Gaylord, 1 Cush. 536; Calvin v. Dayton, 11 Me. 28; Smith v. McLean, 24 Ia. 322; Eldred v. O'Conto Co., 33 Wis. 133.

KELLAM, J. Respondent was the owner of certain flax-seed in his granary, on his farm in Minnehaha county. During his absence from home, and without his knowledge or consent, Gerde, his hired man, hauled to appellants' elevator, and sold and delivered to appellants, a quantity of such flax, receiving the pay therefor. Appellants bought innocently, supposing Gerde had a right so to sell. Immediately after the sale, Gerde absconded with the proceeds, with the exception of a small amount, noticed hereafter. The action was brought against appellants for the conversion of the flax. Respondent had judgment, and appellants appeal.

The first and second assignments of error are entirely ignored in appellants' brief and argument, and, as error in respect to either is not apparent to the court, they are passed without discussion.

The third·error alleged is the exclusion of the testimony of witness Haugen in answer to the question, "Did you have any talk with Mr. Rosum in regard to ten dollars of this money that Mr. Johnson paid you, if he paid any?" This question was propounded to the witness Haugen upon his cross-examination, to which respondent objected. Apparently in response to such objection, and without waiting for any ruling of the court thereon, appellants' counsel made the following offer: "We offer to show that Mr. Johnson, the witness last on the stand, borrowed of Gerde ten dollars of the money that was re-

ceived from the grain in question in this suit; that he saw Mr. Rosum after Gerde had gone away, and told him of the transaction with Gerde, and offered to pay it to Mr. Rosum, and Mr. Rosum told him that he might keep it to apply on the wages that he owed him for services; that Mr. Rosum knew at the time that the money came from the grain in question; and that he said he would not take it himself, for fear it might have some effect upon his claim upon the defendants, but he would allow him to keep it to apply on his wages,"—to which respondent's counsel also objected, among other grounds stated, that it was not proper cross-examination. This objection was sustained by the court, as we think it should have been. The direct testimony of this witness was only that he, in company with Gerde, hauled twelve sacks of the flax in controversy from Rosum's place to appellants' elevator. It had no other force or bearing than to show the single fact that so much of respondent's flax had been taken from his granary to appellants' elevator, and the manner of its transfer. The question presented to the witness, as well as the matter proposed to be proved by him, were entirely outside of and distinct from his direct examination. Cross-examination, both in the learning of the books and the practice of the courts, is confined within the limits of the examination in chief, or, as tersely stated by the court, in Railroad Co. v. Stimpson, 14 Pet. 460: "A party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination." Of course the trial court may, under justifying circumstances, in its discretion, allow the range of cross-examination to be extended beyond the strict rule, but such a case is not presented here. In this case appellants offered evidence obnoxious to the rule; the court excluded it; and such ruling constitutes the alleged error. The assignment cannot be sustained.

The next error assigned is that the court erred in instructing the jury on the question of damages as follows: "The plaintiff in this case, so far as the measure of damages is concerned, has (and he has a perfect right to do it, under the statute) decided to take the highest market value of that flax

between the date of its conversion and the time when you shall have arrived—if you agree—at a verdict. That being the case, the law says that you shall not add to the amount which you shall find due the plaintiff—if you find in his favor—any interest, so that the only question, if you should find that the plaintiff was entitled to recover in this action, would be the highest market value of the flax between the time of its conversion and to-day, or whenever you agree upon a verdict." Under our statute (Section 4603, Comp. Laws) "the detriment caused by the wrongful conversion of personal property is presumed to be (1) the value of the property at the time of the conversion, with the interest from that time; or, (2,) where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party," etc. Under this statute the respondent was entitled, if the action had been prosecuted with reasonable diligence, to make his election between the first and the second measure of damages, but the statute is silent as to when and how such election shall be manifested. In Pickert v. Rugg, (N. Dak.) 46 N. W. Rep. 446, it was held that, to entitle a party to the highest market value between the time of the conversion and the rendering of the verdict, it must affirmatively appear that the action was commenced and prosecuted with reasonable diligence, and that a delay of eleven months in bringing action was fatal to the claim of such reasonable diligence. In this case, however, the alleged conversion occurred on the 22d day of November, 1888, during respondent's absence from the state, which absence continued until December 16th or 17th. The action was commenced on the 26th day of February, 1889, and tried at the ensuing April term. This, we think, was reasonable diligence.

The next inquiry is as to respondent's right to exercise his election as to the rule of damages upon the trial. Appellants claim that respondent had already made his election, and declared the same in and by his complaint, which demanded judgment for "the sum of two hundred and sixty-six and

eighty-five hundredths dollars, with interest from the 26th day of November, 1888;" that as, by the terms of the statute, the first measure of damages should include interest, and the second should not, the demand of interest was a plain election of the first measure. Upon this question we express no opinion; but, conceding this view to be correct, it was clearly competent for the parties, upon the trial, by mutual consent, to adopt the other measure. Upon the trial the only evidence upon the question of damages was that going directly and exclusively to the highest market value of the flax intermediate the conversion and the trial, and, except upon the theory that respondent was then and there entitled to recover such damages, such evidence was clearly inadmissible, but neither objection nor suggestion of its inadmissibility was made. The appellants, by failing to object in any manner to such testimony, either by preliminary objection or subsequent motion to strike out, plainly consented that it was admissible and proper. By admitting the same unchallenged, appellants gave the court to understand that the respondent was entitled to prove such fact, and that he consented to it as tending to show the damages he was properly entitled to recover, if any. It will not do to say that the court had the complaint before it, and must have known from it that respondent had already exercised his option, for, if that were all so, the appellants might still be willing to waive their right, if they had such right, to hold respondent bound by such first election; and how could they have more plainly manifested such willingness than by consenting to the introduction of evidence that would have been inadmissible under any other theory? As above stated, the evidence as to the measure of damages—to wit, the highest market value of the flax between the alleged conversion and the verdict—was distinct, pointed, and direct, and the appellants must have understood its object and significance. By so consenting to its admission, they conceded that it might be regarded as proper evidence in the case. Warder v. Ingli, 1 S. D. 155, 46 N. W. Rep. 181; Becker v. Becker, 45 Iowa, 239. In Colrick v. Swinburne, 105 N. Y. 503, 12 N. E. Rep. 427, the

complaint demanded damages according to a measure therein
declared.   Upon the trial. evidence was offered and received
without objection tending to show damages under a different
rule or measure from that indicated in the complaint.   In its
opinion the court of appeal says:   "It is a sufficient answer to
the objection that the plaintiff, by his bill of particulars, was
confined to a recovery of damages of the exact nature therein
specified; that the objection was not taken until the close of
the plaintiff's proofs, and after the evidence of the rental value
had been given, without raising any question that it was not
competent on the ground of variance from the bill of particu-
lars."   In this case nothing occurred during the entire trial,
as show by the record, to suggest to.the court that appellants
disputed or questioned respondent's right to recover the high-
est market value of the flax between the time of conversion
and the trial, if he was entitled to recover at all; but, on the
contrary, the evidence offered by respondent, and received
without objection by appellants, clearly led the court to un-
derstand that both sides were trying the case upon that theory
We think the evidence in the case fully justified the instruction
of the court

The next assignment alleges error in the charge of the
court upon the question of authority of Gerde to sell the flax.
We do not stop now to examine this instruction in respect to
the error alleged, for the reason that there is no evidence in the
case tending in any degree to show authority, either express
or implied, in Gerde to sell the flax.   If the jury had so found
under any instruction, we think it would have been the duty of
the court to set such verdict aside.

The next and last assignment is that the court erred in
charging the jury that no demand was necessary before bring-
ing the action.   The question as to whether, without previous
demand, an action for the conversion of personal property can
be maintained against an innocent purchaser of such property
from one who tortiously obtained the same from the owner,
has been and still is the subject of frequent and elaborate dis-
cussion in the courts.   In Stanley v. Gaylord, 1 Cush. 536, the

question was examined at great length, both upon principle
and as effected by the rules applicable to and distinguishing
the actions of trespass, trover, and replevin, and the court
concludes (WILDE, J., dissenting) that trespass may be main-
tained without demand.   In Hyde v. Noble, 13 N. H. 494, it
was held that the purchase of property from one who had no
power to sell, when the purchaser took a delivery of it,
and retained possession under the sale, was in itself a conver-
sion by the purchaser, sufficient to enable the owner to main-
tain trover against him without a previous demand.   In Trudo
v. Anderson. 10 Mich. 357, the court held that, where one's
property is disposed of without authority by the person having
it in charge, the owner may bring replevin therefor without a
previous demand, and he may do this notwithstanding the
property is in the hands of one who has bought in good faith,
and without notice of the title of the real owner; and, after
discussing at some length the necessity of a previous demand
in such a case, the court says:   "We do not think the question
of intent or of good faith in a party receiving possession from
a wrongful taker in such cases, and where the owner has been
guilty of no wrong or negligence, can have any bearing upon
the right of recovery in a civil action for the property or its
value, and such is clearly the weight of authority both in Eng
land and in the United States."   And this doctrine was reiter-
ated in Ballou v. O'Brien, 20 Mich. 304.   It is also so held in
Galvin v. Bacon, 11 Me. 28; Mining Co. v. Tritle, 4 Nev. 493;
Clark v. Lewis, 35 Ill. 417; Shoemaker v. Simpson, 16 Kan.
43; Eldred v. Oconto Co., 33 Wis. 133; Smith v. McLean, 24
Iowa. 322.   In an early case in New York, (Storm v. Livings-
ton, 6 Johns, 44,) a contrary doctrine was announced, and has
been adhered to in that state.   In Barrett v. Warren, 3 Hill,
348, COWEN, J., referring to the rule announced in Storm v.
Livingston, and followed in later cases in New York, used the
following significant language:   "I will not, however, deny
that an exception in favor of the taker, where he is a *bona fide*
purchaser from the wrong-doer, has found its way into the
books; nor that, however discordant it be with established

principles, it may, at least in this state, have become too inveterate to be displaced." The rule adopted in New York seems also to have been followed in Indiana. See Wood v. Cohen, 6 Ind. 455, and Connor v. Comstock, 17 Ind. 90. In Eldred v. Oconto Co., *supra*, the supreme court of Wisconsin, after noticing the fact that the New York courts have uniformly held as above indicated, says: "But we find a decided weight of authority the other way, and we are satisfied that the New York rule is not sound in principle." Upon principle, it is not easy to give a satisfactory reason why the true owner, who has been guilty of no wrong or negligence, should be prejudiced by a transaction between the wrongful taker of his property and a third person, or how such a transaction can impose upon him a new obligation. Having been guilty of no act impairing, or in any manner qualifying, either his right of property or his right of immediate possession, he may assert such right whenever and wherever he finds his property. The wrongful taker had no rightful possession against the true owner, and he could convey none to another. In this case the respondent was deprived of the possession of his property by the tortious, if not felonious, act of Gerde, and appellants' claim to the same comes through such tortious taking. The taking did not deprive respondent of his right in and to the property so taken, neither could its sale by the wrongful taker. It remained the absolute property of respondent, as much after as before the sale. The possession of appellants being wrongful as against respondent, the true owner, no previous demand was necessary before bringing suit for the property or its value. Referring to the apparent equity of the New York doctrine as applied to cases where the purchaser was clearly innocent, the supreme court of Michigan says, in Trudo v. Anderson, *supra*: "The principle upon which the New York rule rests might properly have some weight with the court upon a question of costs where these are discretionary, or might justify the legislature in refusing costs to the plaintiff where a previous demand could have been made without serious risk or inconvenience, and the suit has been brought without such demand; but we think the

principle of the rule cannot properly be extended to the right of action." Upon the case presented by the evidence, the instruction complained of was correct. The judgment of the dis- trict court is affirmed. All the judges concurring.