(87 N. W. Rep. 1135.)

---

ADDIE P. WILLARD *vs.* MONARCH ELEVATOR COMPANY.

Opinion filed Oct. 25, 1901.

**Chattel Mortgage—Conversion.**

Plaintiff leased a cultivated farm to one Jepson for the farming season of 1896, under a written lease, which contained the following special provision, to-wit: "The second party to hold five hundred bushels of first party's one-half of wheat until the plowing is done, and shall be a lien on same for that amount; the tickets for the above five hundred bushels to be deposited with R. P. Sherman." *Held,* that such provision is a chattel mortgage, and not a pledge, nor an agreement for a pledge, so far as the wheat is concerned.

**Demand Unnecessary—Where Conversion Shown.**

> At the time of the delivery of the 500 bushels at the elevator, or immediately thereafter, and before the elevator company had issued tickets. for such wheat, or made any disposition of it, plaintiff personally notified the company of her claim, and asked it to hold such tickets until Jepson did the plowing. The elevator agent then agreed to hold the tickets for her. Thereafter the agent turned such tickets over to Jepson, and on demand therefor later by the plaintiff refused to deliver them to plaintiff. *Held*, that turning the tickets over to Jepson, without authority, after such express notice, was a conversion of the wheat, and no demand therefor was necessary before the commencement of the action.

**Evidence of Value—Estoppel.**

> The value of the wheat at the time of the delivery at the elevator was agreed on by stipulation of counsel at the trial. No evidence of value at any other time was offered. It was also stipulated by counsel at the trial that the tickets for this wheat were turned over to Jepson, but the stipulation was silent as to the time when so delivered. The trial court, without objection, and pursuant to such stipulation, adopted the price of the wheat when delivered as the measure of damages. *Held*, that appellant cannot urge after the trial that there was no evidence of the value of the wheat at the time of the conversion.

Appeal from District Court, Cass County; *Pollock, J.*

Action by Addie P. Willard against the Monarch Elevator Company. Verdict for plaintiff. From an order denying a new trial, defendant appeals. Affirmed.

*P. H. Rourke,* for appellant.

Plaintiff, by the stipulations in her contract for lease, agreed that Jepson should pay her half of the crops raised, to be delivered at the time of threshing, free of expense, in the elevator at Buffalo, she to hold 500 bushels of his half of the wheat until the plowing was done, the tickets for the 500 bushels to be deposited with R. P. Sherman. The contract was a pledge, or agreement for a pledge of wheat. § § 4745, 4751, 4746, Rev. Codes; Story on Bailment, § 286; *Luckett* v. *Townsend,* 49 Am. Dec. 730. It is the essence of such contract that delivery of custody of the pledged property be made to the pledgee, he to continuously retain the possession. *Bank* v. *Nelson,* 38 Ga. 391; *Casey* v. *Cavaroc,* 96 U. S. 467; *Luckett* v. *Townsend,* 49 Am. Dec. 730. The contract being an agreement for a pledge was inadmissible in evidence under a complaint declaring on a chattel mortgage. By treating the contract as one of chattel mortgage, plaintiff thereby agreed to the delivery of the wheat into the elevator of appellant, consenting that the tickets be delivered to Sherman. Appellant, having dealt with the wheat with respondent's consent, cannot be held for conversion except on proof of demand for the property and a refusal to deliver. *Plano Mfg. Co.* v. *Elevator Co.,* 53 N. W. Rep. 202 *Stanford* v. *Elevator Co.,* 2 N. D. 2; *Towne* v. *Elevator Co.,* 8 N. D.

200; *Valentine* v. *Duff*, 34 N. E. Rep. 553. There was no proof of value at the time of the alleged conversion, or afterwards, proof of value being as of a date two months prior to the alleged demand. *Towne* v. *Elevator Co.*, 8 N. D. 200; § 5000 Rev. Codes. Under the contract the wheat tickets were to remain in the hands of Sherman to await performance of the conditions of the lease. Plaintiff, to recover in conversion, must be in possession or entitled to possession of the property at the time of the conversion. Under this contract she was not in possession or entitled to possession. *Clendening* v. *Hawk*, 8 N. D. 419; *Parker* v. *Bank*, 3 N. D. 87.

*Newman, Spalding & Stambaugh,* (*Duerment & Moore* of counsel), for respondent.

Appellant's contention fails to give effect to the clearly expressed intention of the parties that respondent was to hold this wheat and have a lien thereon. This clause creates a lien without any other or further act on the part of the tenant. § § 4673, 4680, 4681, 4701, 4713, 4745, Comp. Laws; *Bidgood* v. *Monarch Elevator Co.*, 9 N. D. 627. The contract was not one of pledge for the reason that all the essentials of a pledge were lacking. The clause in question clearly amounted to a chattel mortgage. *Harris* v. *Jones*, 83 N. C. 317; *Mitchell* v. *Badgett*, 33 Ark. 307; *Whitney* v. *Eichelberger*, 16 Ia. 422. Counsel, by stipulating that the value of the wheat at the time it was delivered was fifty-six cents, conceded that damages were to be fixed as of that day. Having led the court to act upon this stipulation he cannot now insist that a different theory be adopted. *Parish* v. *Mahaney*, 81 N. W. Rep. 295, 12 S. D. 278.

A state of affairs once shown to exist is presumed to continue. If the value of wheat was lower appellant was entitled to avail itself of that fact and could have shown it. *Howland* v. *Davis*, 40 Mich. 545. Both parties having moved for a directed verdict at the conclusion of plaintiff's testimony, each consented that the court determine the case without a jury. *New England Mfg. Co.* v. *Elevator Co.*, 6 N. D. 407, 71 N. W. Rep. 130; *Stanford* v. *McGill*, 6 N. D. 536, 72 N. W. Rep. 738; *First Methodist Church* v. *Fadden*, 8 N. D. 162, 71 N. W. Rep. 615; *Rosenbaum* v. *Hayes*, 8 N. D. 461, 79 N. W. Rep. 987; *Buettell* v. *Magone*, 157 U. S. 154, 15 Sup. Ct. Rep. 566.

MORGAN, J. This is an action for the conversion of wheat, on which it is alleged that the plaintiff had a chattel mortgage. One Jepson leased a half section of land from the plaintiff for farming purposes in the year 1896. The lease was in writing, and was duly filed in the office of the register of deeds for Cass county, and contains the following special provision, which is claimed to be a chattel mortgage, to-wit: "Said Matthew Jepson agrees to pay Addie P. Willard the one-half (½) of all crops raised upon said premises, to be delivered at the time of threshing to Addie P. Willard, free of expense, in the elevator at Buffalo, or in the granary on

said premises. Said Addie P. Willard agrees to give Matthew Jepson one (1) acre free as a garden. Said Matthew Jepson agrees to plow back all lands five (5) inches deep, except forty (40) acres of breaking, which shall be subsoiled one-half ($\frac{1}{2}$) inch. The second party to hold five hundred (500) bushels of first party's one-half ($\frac{1}{2}$) of wheat until the plowing is done, and shall be a lien on same for that amount. The tickets for the above five hundred bushels to be deposited with R. P. Sherman." The lease contained other stipulations providing that, in case of default in the conditions of the lease as to matters not contained in the provision quoted above, the plaintiff might take possession of all of the crops, and sell them, and apply the proceeds towards the performance of the stipulations of said lease not performed by said Jepson; the residue of such proceeds to be paid over to said Jepson. The lease also contained a provision that the title and possession of the wheat and all crops grown thereon should be and remain in the lessor until a division thereof was made. The complaint states a cause of action for the wrongful conversion of the 500 bushels of wheat alleged to have been covered by said mortgage after actual notice of the existence of such mortgage on said 500 bushels and after demand that the wheat or proceeds be turned over to the plaintiff. The complaint also alleges that the said Jepson failed and refused to plow the land as agreed to by him in said lease, whereby the condition in said contract as to the security for the plowing of the land became operative and of force; that, in consequence of such failure on said Jepson's part to plow said land, she was compelled to cause the same to be done, and did cause the same to be done, to her damage in the sum of $280 and interest. The answer was a general denial of the allegations of the complaint. At the close of the taking of testimony on the part of the plaintiff, and after denying a motion made by the defendant for a directed verdict in his favor, the trial court directed a verdict in favor of the plaintiff. A motion for a new trial was duly made by the defendant, based upon a settled statement of the case, and denied. The defendant appeals from such order refusing to grant a new trial.

There was no evidence offered at the trial on the part of the defendant. It is first contended by the appellant that the provision of the lease, hereinbefore set out in detail, constituted it a pledge or an agreement for a pledge and not a chattel mortgage. "Every contract by which the possession of personal property is transferred as security only, is to be deemed a pledge." Section 4745, Rev. Codes. "The lien of a pledge is dependent on possssion and no pledge is valid until the property pledged is delivered to the pledgee or to a pledge holder as hereinafter described." § 4746, Rev. Codes. By the terms of these sections, which are declaratory of the common law on the subject of pledges, no valid pledge can be made unless there be a transfer of the possession of the property pledged at the time. A change of possession of the article

pledged is· of the very essence of such a transaction, and a per-
requisite to the valid creation of the relation of pledgor and
pledgee.   In this case this essential—the transfer of possession
—was wanting, and impossible to be complied with, at the date
of the contract or lease.   The subject of the special provision—
the wheat—was not in existence, and a delivery of possession
thereof was not possible.   Hence, although the language of this
special provision could be construed as creating a pledge or a
mortgage, it is nevertheless the duty of· the courts to give effect
to the intentions of the parties in their negotiations, and such
negotiations should not be construed to be meaningless, or of
no effect, when their language is reasonably susceptible of a con-
struction that gives effect and force to all the provisions thereof..
Under the terms of the special provision every essential to the
making of a valid chattel mortgage of the wheat is to be found
in the provision.   A lien is expressly created by this contract as
security for the' performance of the conditions of the contract
and it provides how these conditions shall be performed in case of de-
fault by the lessee.   Looking at the provisions of the instrument,
and construing them together, it is clear to us that the relation of
mortgagor and mortgagee .was created by its terms.   *Harris* v.
*Jones,* 83 N. C. 317; *Mitchell* v. *Badgett,* 33 Ark. 387; *Whiting* v.
*Eichelberger,* 16 Iowa, 422.   The special provision is not an agree-
ment for a pledge, for the reason that Jepson was not obligated to do
anything concerning these 500 bushels after the threshing under
the terms of this contract was done.   His duty as to this ended when
the threshing was done.   The plaintiff was to hold these 500 bush-
els, and to have a lien thereon.   It was not his duty, even, to put this
wheat into the elevator.   It is true that, if tickets had been pro-
cured for this wheat, and placed in the hands of Sherman, a pledge
of the tickets would have been created.   But this was never done,
and not done because of the wrong of the defendant.   This makes
it necessary to set out what the evidence shows as to the disposition
of the wheat and tickets.   The threshing of this wheat was done
about September 1, 1896.   The plaintiff was not on the premises
at the time the threshing was done, but arrived there on the day the
threshing was finished.   The wheat was hauled from the threshing
machine to the elevator by Jepson.   A division of the wheat was
made by the parties at the elevator.   The plaintiff received the
tickets for her share, less what was left in the granary, according
to the terms of the contract.   At this time the plaintiff notified the
elevator agent that she had a .claim against his (Jepson's) wheat.
The plaintiff says, as to notifying·the agent, "I notified the agent,
Mr. Fellows, that I had a claim against the wheat," and the agent
said that "he would hold it for me."   A witness testifying as to what
was said by her to the agent at this time says:   "Mrs. Willard told
Mr. Fellows that she had a lien on the crop,and she told him she
didn't want him to deliver the tickets until Jepson had plowed.   Mr.
Fellows said she need not worry."   This was before Jepson had

received the tickets for his share of the wheat. If Jepson had previously received the tickets, or the proceeds of the wheat, the agent would not have agreed to hold the tickets for the plaintiff until Jepson had done the plowing. The effect of this notification must be held to be that the defendant company was apprised by actual notice of the claims and rights of the plaintiff to a lien upon that amount of Jepson's share of the wheat. The fact of sufficient notification is not denied by counsel for the appellant. The evidence shows that at a later period—the exact time not being given—the elevator agent turned all the tickets over to Jepson, and, when the tickets were demanded subsequently, the plaintiff was informed by the agent that he could not deliver the tickets to her, as he did not have them.

To summarize, it is shown by the evidence that the following facts are proved: (1) That the plaintiff had a mortgage lien upon 500 bushels of Jepson's share of the wheat to secure the performance of the conditions of the lease as to plowing. (2) That Jepson delivered the wheat at the elevator rightfully, as provided by the terms of the contract, or, if not strictly in accordance with the terms of the contract, that his actions in that behalf were acquiesced in by the plaintiff. (3) An express notice to the defendant's agent that the plaintiff had a lien on the 500 bushels, and the right to hold that much of the wheat, and an agreement by the defendant to hold it. (4) A turning over of the tickets to Jepson contrary to instructions, contrary to the terms of the contract, without right, and without any authority. These facts are, in our opinion, sufficient to establish a conversion by the defendant of the wheat in question. Conversion is a completed act, by which property is disposed of without authority by another than the owner contrary to the rights of the owner, or one having a lien or mortgage thereon. Although the possession of this wheat by the defendant in this case was at first not wrongful, it was wrongful to turn the tickets over to Jepson. The defendant had express notice of plaintiff's interest in the wheat and had agreed to hold the tickets until Jepson had performed the stipulations of the contract as to plowing. The language of this court in *Towne* v. *Elevator Co.*, 8 N. D. 200, 77 N. W. Rep. 608, is directly in point in this case, and we adopt the language used in the opinion in that case as applicable and controlling under the facts of this case. The language referred to is as follows: "We are disposed to accept the view of respondent's counsel, and sustain their contention as to the abstract legal proposition that the act of delivering the storage tickets, and the whole thereof, to Murray, and in his name, if done after notice of plaintiff's rights, was an act adverse to the rights of the plaintiff, and of such a prejudicial nature as would constitute a conversion of property for which an action would lie. This proposition is elementary." In this case the plaintiff had a lien on this wheat, and the defendant knew it. It was claimed by the plaintiff as security for the doing of the plowing, and the defendant knew it. The plowing had

not been done at the time notice was given, and the defendant knew that fact. The turning over of the tickets to Jepson under the circumstances was subversive of plaintiff's rights, and constituted of itself a conversion of the wheat, and the defendant is liable without the necessity of a demand preliminary to the suit. We so decide without determining whether, under all the evidence in this case, there was a demand of the wheat, although it is practically undisputed that there was a demand for the tickets before the suit was commenced. At the time of the notice to the agent in the presence of the witness Lowry the plaintiff had a right to demand the tickets for the purpose of putting them into Sherman's hands,. or the right to insist that the agent put them into Sherman's hands, as provided by the lease, of which lease the defendant's agent had actual and constructive notice of its terms. The lease is not specific as to who was to turn the tickets over to Sherman. We think a fair construction of the lease, in connection with the facts that transpired between the parties, that the plaintiff, and not Jepson, was the person to turn them over to Sherman. The plaintiff was the person who held the mortgage lien, and entitled to hold the wheat. So far as disposing or controlling this 500 bushels covered by the mortgage lien, Jepson had no more right over it than a stranger. The title of all the wheat was in the plaintiff. She was always entitled to its possession up to the time of the division, and entitled to hold this wheat (the 500 bushels) afterwards; and it is plain to us that after its storage in the elevator she was entitled to hold the tickets, and to receive them for the purpose of turning them over to Sherman. Whether she was the one entitled to receive these tickets for the purpose of turning them over to Sherman is not a controlling fact in this case. It is sufficient for a disposition of this case that Jepson had no right to these tickets,—a fact which we find from a construction of the contract. The following authorities will be found to sustain the proposition that no demand is necessary to establish a conversion in cases based upon facts in effect similar to the case at bar: *Velsian* v. *Lewis*, (Or.) 16 Pac. Rep. 631, 3 Am. Rep. 184; *Carter* v. *Kingman*, 103 Mass. 517; *Harpending* v. *Meyer*, 55 Cal. 557; *Eldred* v. *Oconto Co.*, 33 Wis. 133; *Rosum* v. *Hedges*,. 1 S. D. 308, 47 N. W. Rep. 140, 9 L. R. A. 817; *Irrigation Co.* v. *Hawley*, 7 S. D. 229, 63 N. W. Rep. 904; *Kendrick* v. *Rogers*, 26. Minn. 344, 4 N. W. Rep. 46.

The appellant assigns as further error that there is no evidence in the case to show what the value of the wheat was at the time of the conversion of the wheat. This assignment is based upon the erroneous conclusion that a demand was necessary in this case. There is a stipulation in the record that the value of the wheat in question was 56 cents per bushel at the time of the delivery of the wheat at the elevator. The wheat was delivered at the elevator early in September. There is also a stipulation in the record that the tickets were turned over to Jepson by the elevator agent. This stipulation is silent as to the time when delivered. It is contended.

by appellant's counsel that, inasmuch as there was no demand for the wheat before November, proof of value in September would not be competent proof of the value in November. If such were the facts, we should so hold under the recent decision of this court in *Towne* v. *Elevator Co.,* supra. We have found in this case that the delivery of the tickets to Jepson was an act so inconsistent with plaintiff's rights to the wheat as to amount to a conversion of the wheat by the defendant at the moment of the delivery of such tickets to Jepson irrespective of any previous demand. The stipulation shows such a delivery to Jepson without stating the time of such delivery. In other words, that the refusal to deliver the wheat after demand does not constitute the conversion in this case. On the contrary, the conversion became absolute at the moment of turning the tickets over to Jepson, and suit could thereafter have been brought immediately without any demand. Had the value of the wheat been shown at the time of the delivery of the wheat in September, and no conversion had been made of the wheat or tickets until after a wrongful refusal to turn over the wheat after demand in November, the rule in the Towne Case would be applicable. But we have no such facts here, and the rule in that case cannot be invoked. The evidence in the case shows what the value of the wheat was at the time of its delivery at the elevator in September. This evidence was acted upon by the trial court pursuant to a stipulation of counsel made in open court. By such stipulation the court must have been led to believe that the value of the wheat at the time of the delivery to the elevator was the proper measure of damages. The court's attention not having been called to the fact that the value of the wheat was not to be measured according to the facts stipulated, the appellant must be held to have consented that the damages be measured as of the time of delivery, and it is too late to suggest a different rule on an appeal or on a motion for a new trial. *Warder, Bushnell & Glessner Co.* v. *Ingli,* 1 S. D. 155, 46 N. W. Rep. 181; *Becker* v. *Becker,* 45 Iowa 239; *Colrick* v. *Swinburne,* (N. Y. App.) 12 N.E.Rep. 427; *Rosum* v. *Hodges,* 1 S.D. 308, 47 N.W.Rep. 140, 9 L. R. A. 817; *Parrish* v. *Mahany,* 12 S. D. 278, 81 N. W. Rep. 295, 76 Am. St. Rep. 604; 8 Enc. Pl. & Prac. p. 211, tit. "Evidence," and cases cited. The stipulation admitted that the value of this wheat, when delivered, was 56 cents per bushel. It does not appear from the evidence when the tickets were turned over to Jepson and the wheat thus converted. Under the statute (Rev. Codes, § 1790) regulating the delivery of tickets for wheat stored, and under the well-known custom in dealings between parties in such matters, and in view of the said stipulation, we refuse to hold that the value of the wheat as fixed by this stipulation was not its value when the tickets were turned over to Jepson, which, in the usual course of business, was undoubtedly very soon after delivery at the elevator. The evidence of value having been introduced without objection, and under a mutual stipulation, and considered by counsel and court as competent and material at the trial, error in

acting upon it cannot be raised after the trial, under the circumstances of this case. 8 Enc. Pl. & Prac. pp. 231, 236, and cases cited; 2 Enc. Pl. & Prac p. 216, and cases cited; *Parsons* v. *Hedges*, 15 Iowa, 119.

This disposes of all the assignments of error urged in appellant's brief which we deem of sufficient merit to warrant consideration. Order denying new trial affirmed. All concur.