WILLIAM G. SLOAN AND JONAS P. JOHNSON, PLAINTIFFS IN ERROR, V. WILLIAM COBURN, DEFENDANT IN ERROR.

[FILED MAY 31, 1889.]

1. **Fraud:** SALE OF PERSONAL PROPERTY: EVIDENCE. Where the grantor of personal property was heavily indebted at the time of the conveyance, and soon after the transfer made statements in derogation of the *bona fides* thereof on his part, in a contest between the grantee and the creditors of the grantor over the property, the creditors alleging the sale to have been fraudulent, such statements are proper to be proven for the purpose of showing fraud on the part of the grantor at the time of the conveyance, but not for the purpose of showing fraud on the part of the grantee, or of impairing his title.

2. **Attachment:** REPLEVIN: DAMAGES. Where property is replevied from an officer who has possession by virtue of a levy of an order of attachment, and the trial of the replevin suit results in a verdict and judgment in favor of the officer, his measure of damages is the amount due the attachment plaintiffs at the time of the levy of the order of replevin, (within the value of the property,) and not including writs of attachment which came into his hands after he had been divested of his possession by the replevin proceedings.

3. **Chattel Mortgage.** Where a debtor, for the purpose of securing a debt, conveys personal property to his creditor, giving him the possession thereof with authority to the creditor to sell the same and account to the debtor for the surplus after paying the debt so secured, together with the necessary expenses of sale, etc., the instrument by which the conveyance was made will be treated as a chattel mortgage as well between the grantee and the creditors of the grantor as between the parties to the transfer.

4. **Instructions** given to a jury upon the trial of a cause must be applicable to the evidence adduced.

5. **Verdict.** Evidence examined, and *held*, not to sustain the verdict.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*Breckenridge & Breckenridge,* for plaintiff in error, cited: Wells on Replevin, sec. 302; *Turner, Frazer & Co. v. Killian,* 12 Neb. 586; *Gray v. Earl,* 13 Iowa, 188; *Lefler v. Field,* 52 N. Y. 622; *Tucker v. Parks,* 1 Pacific Rep. 431; Jones on Chattel Mortgages, 2d Ed., 352, 353, 358; *Bonns v. Carter,* 20 Neb. 578; *Omaha Book Co. v. Sutherland,* 10 Id. 334; *Butts v. Privett,* 14 Pacific Rep. 250; *Grimes v. Farrington,* 19 Neb. 48.

*Montgomery & Jeffrey, John L. Kennedy,* and *Charles B. Keller,* for defendant in error, cited: *Richardson v. Steele,* 9 Neb. 486; *School District v. Shoemaker,* 5 Id. 36; *B. & M. R. R. Co. v. Young Bear,* 17 Id. 669; *Simpson v. Armstrong,* 20 Id. 512; *Hagan v. Lucas,* 10 Peters, 400; *Hunt v. Robinson,* 11 Cal. 262; *White v. Dolliver,* 113 Mass. 402.

REESE, CH. J.

This was an action of replevin brought by plaintiffs in error against defendant in error to recover possession of a stock of groceries and other property. It is substantially

agreed by counsel that on the 28th day of January, 1887, the firm of J. H. Johnson & Company, being indebted to plaintiff in the sum of fifteen hundred and forty dollars and fifty cents, transferred to plaintiff by bill of sale the property in question to secure the payment of said indebtedness. The property was immediately taken possession of by plaintiff under said bill of sale. Afterwards, and on the same day, other creditors of J. H. Johnson & Company sued out writs of attachment, and by virtue thereof the defendant, who was the sheriff of Douglas county, levied upon said property as the property of J. H. Johnson & Company, and took the same from the possession of plaintiffs. Thereupon plaintiffs brought their action of replevin. The trial was had in the district court to a jury, and a verdict was rendered in favor of defendant in error. Thereupon plaintiffs filed a motion for a new trial, which was overruled, to which ruling plaintiffs duly excepted. Judgment was then rendered on the verdict in favor of defendant and against the plaintiffs. The plaintiffs bring the case into this court by proceedings in error, and seek a reversal of the judgment upon the errors assigned in their motion for a new trial and petition in error. We will only examine such of the alleged errors as we deem material to this review, as upon new trial the questions omitted will not likely arise again.

It was and is contended by defendant in error that the transfer of the property made by J. H. Johnson & Company to Sloan, Johnson & Company, was fraudulent, and as a part of the evidence to sustain their theory of the case, they sought to prove certain statements made by J. H. Johnson after the transfer to Sloan, Johnson & Company. This evidence was objected to by plaintiff upon the ground, evidently, that after the transfer the statement of the vendor could not be received for the purpose of impairing the title of the vendee. The objection was overruled by the district court. It is shown by the record that at the

39

time of the ruling upon the objection, the court stated that the testimony was not received for the purpose of impeaching or any way impairing the title which had been acquired by the firm of Sloan, Johnson & Company, but for the purpose of showing the intention of J. H. Johnson & Company at the time they made the transfer. In this ruling of the court we think there was no error. In order to prove the transaction fraudulent, it must have been established that J. H. Johnson & Company made the transfer with the intent and purpose of hindering, delaying, or defrauding, their creditors in the collection of their claims, and also that the firm of Sloan, Johnson & Company had knowledge of or participated in this fraudulent design. While it was not enough to show that the firm of J. H. Johnson & Company were actuated by fraudulent motives, yet as a part of the case it was essential to show that fact, although in the absence of other testimony the title of Sloan, Johnson & Company could not be impaired thereby. (*Williams v. Eikenberry,* 25 Neb. 721.)

For the purpose of showing the sheriff's interest in the property at the time of the trial, defendant in error was allowed to introduce in evidence certain writs of attachment which came into his hands after the property was replevied by plaintiff. In this we think the court erred. (*Merrill v. Wedgwood,* 25 Neb. 283.)

It is not deemed necessary here to rediscuss this question. We are satisfied with the decision in the case referred to, and see no reason why the rule should be changed. Any other rule would place a plaintiff in a replevin suit brought against an officer, at the mercy of all other persons having claims against the debtor.

The instrument by which the property in question was transferred to Sloan, Johnson & Company was as follows:

"Know all men by these presents: That we, J. H. Johnson & Company, of the first part, for and in consideration of the sum of fifteen hundred and forty dollars and

fifty cents, lawful money of the United States, to us in hand paid at or before the ensealing and delivery of these presents, by Sloan, Johnson & Company, of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto the said parties of the second part, their executors, administrators, and assigns, the following personal property, to wit: A general grocery stock, consisting of sugar, tea, coffee, canned goods, soap, cigars, tobacco, and such other goods as are usually kept in a retail grocery store; also a stock of salt and fresh meats; and all fixtures, including show cases, shelving, store furniture, etc., in the grocery store and meat shop of said J. H. Johnson & Company, at No. 701 and 703 Phil Sheridan street, in the City of Omaha, Neb.; the intention being to include herein all personal property of all kinds in said store and shop and wareroom adjoining; also, one black horse, four light bay horses; also, two two-horse delivery wagons and two sets double and one set single harness; also one buckboard, one cutter, and one sewing machine.

"The said Sloan, Johnson & Company are to take immediate possession of said property, to sell the same at retail in the usual course of trade, and shall account to said J. H. Johnson & Company for any surplus over the said above mentioned sum, and the expenses of sale, etc.; belonging to us, and now in our possession at the place last aforesaid.

"To have and to hold the same unto said parties of the second part, their executors, administrators, and assigns, forever. And we do for ourselves, our heirs, our executors, and administrators, covenant and agree to and with the said party of the second part, their executors, administrators, and assigns, to warrant and defend the sale of said property, goods, and chattels, hereby made unto the said party of the second part, their executors, administrators, and assigns, against all and every person and persons whomsoever.

"In witness whereof we have hereunto set our hands and seal this 28th day of February, 1887."

On the trial it was shown that the date here mentioned was a mistake. It should have been the 28th day of January, 1887, that being the day upon which the instrument was made.

Upon the trial, at the request of defendant in error, the court gave to the jury the following instruction, number three of the series asked by defendant in error:

"3d. You are instructed that while a creditor may obtain payment in full of his claim to the exclusion of other creditors, provided he takes no more than will be sufficient to satisfy his claim, provided he does not collude or agree with his debtors to hinder, delay, or defraud, other creditors; yet, if in procuring satisfaction of his claim he go further, and tie up other property so that it hinder or delay other creditors, such arrangements would be contrary to the statutes of Nebraska and therefore void; and if you find from the evidence that the transfer from J. H. Johnson & Company to Sloan, Johnson & Company, in this case was of such a nature, and did so hinder and delay other creditors in the collection of their debts, your verdict should be for the defendant."

In giving this instruction we think the learned district judge erred. It seems to us quite clear that the instrument above copied can be treated only as a mortgage on the property described; and that when Sloan, Johnson & Company procured the satisfaction of the indebtedness due to them, their title to the property would be thereby extinguished. It is true the legal title was conveyed to them as in any other chattel mortgage, but evidently for the purpose alone of satisfying or procuring the satisfaction of the claim due from J. H. Johnson & Company to Sloan, Johnson & Company. As soon as the indebtedness to Sloan, Johnson & Company was satisfied, the property would of necessity revert to J. H. Johnson & Company. By the instruction

the court informed the jury that if Sloan, Johnson & Company took more than would be sufficient to satisfy their claim, or if they tied up other property so as to hinder or delay other creditors, such an arrangement would be contrary to the statutes of this state, and their verdict should be for defendant in error. Assuming the instrument in question to be a chattel mortgage we know of no rule of law which requires a mortgagee to take no other property than simply sufficient to satisfy his claim. (*Grimes v. Farrington*, 19 Neb. 48.)

At the request of defendant in error the court also gave the following instruction, number four:

"4th. If you find from the evidence than at the time the bill of sale was given by J. H. Johnson & Company and it was understood and agreed that Sloan, Johnson & Company were to take possession of the stock of goods transferred by the bill of sale, and sell the same at retail in the usual course of trade, keeping up the stock by purchasing and mixing other goods with those transferred, and continuing the business indefinitely, paying clerk hire and other expenses out of the proceeds derived from the sale of the goods transferred, whereby the opportunity of creditors not secured to collect their debts is lessened or impaired, which arrangement was to continue until the net proceeds of the business amounted to sufficient to satisfy the claim, and confining the manner of sale to one particular mode not in conformity to the statute, you are at liberty to consider such facts, if proven, in connection with the other testimony, to ascertain whether or not the transaction was one made in good faith for the purpose only of securing plaintiffs' claim."

As seen by the instrument above quoted, it contains no provision authorizing Sloan, Johnson & Company to keep "up the stock by purchasing and mixing other goods with those transferred, and continuing the business indefinitely, paying clerk hire and other expenses out of proceeds derived

from the sale of the goods transferred   *   *   *   until the net proceeds of the business amount to sufficient to satisfy the claim." We have carefully examined the bill of exceptions throughout, and are unable to find any testimony tending to show that any such an agreement was made at the time of the execution of the bill of sale, or, in fact, at any other time. It is true that Mr. Johnson, of the firm of Sloan, Johnson & Company, when upon the witness stand, testified that such goods were added as were necessary to keep up the trade; that the business was carried on, the clerks were hired, etc.; but we find nothing that would warrant us in concluding that this was by virtue of any arrangement made prior to the execution of the bill of sale or at that time. It is true that such a course was pursued by Sloan, Johnson & Company, as was fully stated by Mr. Johnson when upon the witness stand; but by a reference to the dates, we find that on the 28th day of January the bill of sale or mortgage was executed; on that same afternoon or evening the attachment was levied upon the property and they were divested of their possession. On the next day they replevied the property from the sheriff. Knowing, evidently, that they would be held responsible for the full value of the goods replevied, they did what any other prudent business men would have done under similar circumstances; they supplied such goods as were necessary to keep up the trade until they could dispose of the goods replevied. But this can in no sense be charged back to an arrangement supposed to have been entered into at the time of the transfer of the property. We think, therefore, that the instruction was not applicable to the evidence adduced, and in giving it the court erred. Among other instructions asked by plaintiff in error and given by the court, we observe the two following, numbered three and four. They are as follows:

"3. You are instructed that the bill of sale from J. H. Johnson & Co. to Sloan, Johnson & Co. in question in this

suit, is not fraudulent and void on its face; that is, by its terms; and unless you find from the evidence actual fraud, or an intent to defraud the creditors of J. H. Johnson & Company, and that fraud, or intent to defraud, participated in by Sloan, Johnson & Company, or known by them, or with reasonable means of knowing such fraudulent intent, if such existed on the part of J. H. Johnson & Co., your verdict should be for the plaintiff.

"4. You are instructed that it is the law that a debtor even in failing circumstances has the right to pay the *bona fide* demand of one of his creditors to the exclusion of others, and if you find that the bill of sale in question was given by J. H. Johnson & Co. to Sloan, Johnson & Co. to secure a *bona fide* indebtedness from J. H. Johnson & Co. to Sloan, Johnson & Co., and the same was taken in good faith by Sloan, Johnson & Co., for the purpose only of securing their claim, and without any intent on the part of Sloan, Johnson & Co., to defraud, hinder, or delay, the other creditors of J. H. Johnson & Co., or to aid J. H. Johnson & Co. so to do, then your verdict should be for the plaintiff."

It appears from the evidence that J. H. Johnson & Company were indebted to Sloan, Johnson & Company, in the sum of fourteen hundred and fifty dollars and fifty cents; that Sloan, Johnson & Company had befriended them, and upon the day on which the instrument above quoted was given, Sloan, Johnson & Company called the attention of J. H. Johnson & Company to certain damaging rumors which were being circulated in commercial circles in Omaha, and asked that they be secured in their claim.    This J. H. Johnson & Company agreed to do.    J. H. Johnson and J. P. Johnson, one of the plaintiffs, went to the office of an attorney in Omaha, and secured the bill of sale to be made. There is no proof anywhere that Sloan, Johnson & Company were actuated by any desire or purpose other than to cause their claim to be secured, in procuring the execution

of the instrument above referred to. There is no proof which would seem to indicate that they entertained any desire or purpose to defraud any of the creditors of J. H. Johnson & Company, or to assist J. H. Johnson & Company, in covering up their property. They accepted the security and took possession of the store and other property described in the bill of sale or mortgage, and had not the sheriff levied the orders of attachment upon it immediately after they took possession, there is nothing to show but that they would have disposed of the property to at least a sufficient amount to pay their claim, and that in as expeditious a manner, and with less expense, perhaps, than could have been done by an ordinary foreclosure. Had the instruction hereinbefore referred to not been given, we are not quite able to see how the jury could have arrived at the verdict which they did under these two latter instructions above quoted. In addition to the errors hereinbefore pointed out, we think the verdict is not sustained by sufficient evidence, and that a new trial should be granted.

The judgment of the district court is reversed. The cause is remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other Judges concur.