(86 N. W. Rep. 714.)

---

J. I. CASE THRESHING MACHINE CO. *vs.* NELS OLSON.

Opinion filed April 26, 1901.

**Chattel Mortgage—Execution—Witnesses.**

In an action between mortgagee and mortgagor, *held*, that it is not necessary to show that the execution of a chattel mortgage was witnessed.

**Substitution of New Debtor.**

Evidence reviewed, and *held* not to establish that there was a substitution of a new debtor, and a release of the original one.

Appeal from District Court, Cass County; *Pollock,* J.

Action by the J. I. Case Threshing Machine Company against Nels Olson. Judgment for plaintiff. Defendant appeals.
Affirmed.

*M. A. Hildreth,* for appellant.

*Turner & Lee,* for respondent.

MORGAN, J. The complaint states a cause of action for the foreclosure of a chattel mortgage given, with several notes accompanying it, on August 17, 1898. Only two of the notes are involved in this suit,—one for $300 and one for $416. The others have been paid. The answer sets forth as a defense that the mortgage and notes were given in consideration of the sale by the plaintiff to the

defendant and one Anderson of a second hand threshing outfit, said Anderson, it is alleged, being the partner of the defendant in the purchase and operation of such threshing outfit. The answer further alleges that the plaintiff did, on July 15, 1899, for a valuable consideration, actually release said defendant from liability by virtue of his having executed such notes and mortgage, and did further agree to accept said Anderson in his stead as the one to whom it would solely look for payment of such notes and mortgage. The case was tried to the court without a jury, and judgment rendered in favor of the plaintiff. A trial *de novo* is requested here.

The only question of law urged by the appellant in his brief is that the plaintiff failed to prove that the mortgage admitted in evidence was properly executed. He claims that it is necessary to prove that the signing of the mortgage by the defendant was duly witnessed, and cites as authority for such a contention the case of *Keith* v. *Haggart,* 2 N. D. 18, 48 N. W. 432. That case is not in point. In that case the rights of third parties were involved. There can be no doubt that the formality of witnessing the execution of a mortgage is not contemplated by the statute, except as a prerequisite to filing, in order that it may become constructive notice to incumbrancers or purchasers of the property mortgaged. See § § 4733, 4738, Rev. Codes; Jones, Mortg. § 532. See, also, *Machine Co.* v. *Lee,* (S. D.) 57 N. W. 238, where this identical section (4738) is considered.

The trial court refused to find, on the request of defendant's attorney, that the plaintiff agreed to release said Olson from all liability on account of such notes and chattel mortgage, and that it agreed to accept said Anderson as the one responsible for the payment of them, in place of said Olson. It is claimed that the evidence sustains such a finding, and that it does not sustain any finding to the contrary. It is, therefore, necessary for us to review the evidence in order to determine what the truth is as to this contention. The facts briefly outlined, are that defendant and Anderson operated the threshing rig in partnership in the fall of 1898, and bought the rig as partners, although Anderson's name did not appear in the notes or mortgage. In the summer of 1899 Olson desired to sell the outfit to Anderson. Anderson and Olson saw the plaintiff's agent in regard to consenting to such a sale, and were informed that "it would be all right." Two weeks later Olson sold the machine to Anderson. After this sale they went to Fargo to see the plaintiff's agents. They then informed such agents that Anderson had bought the rig. Anderson here guaranteed the payment of the note to become due that fall by an indorsement on the back of it. Anderson does not claim that Olson was ever released from payment of the note or notes, but says there was talk concerning it at this interview. Olson says, in testifying on cross-examination as to this interview: "When Anderson and I came to the Case office together, I asked them to fix up the deal with Anderson, and take his notes, and give me mine. They would not do it." In other parts of his evidence he testifies to the

effect that he "understood that he was released," and "that they said they would take Anderson in my place." Such general statements or conclusions cannot be taken to overcome the positive denial by the witnesses for the plaintiff that such release was ever given, but was in fact refused. The testimony of Anderson squarely corroborates plaintiff's witnesses on this point. It is a significant fact in the case that·Olson came to Fargo in October, 1899, and asked plaintiff's agents how much they had collected from Anderson, and then informed them that he had abandoned the machine, and left the state. Why he should interest himself as to the amount collected, if he was released, does not appear. We view his conduct on this occasion as strongly corroborating plaintiff's claim that he was never released from payment of the indebtedness. It is incomprehensible why the company should release Olson, who is financially responsible, and accept Anderson, who is irresponsible, and do so without any benefit accruing to it whatever. If the company was willing to release Olson, there is no reason shown why it would be unwilling to surrender his notes, which it refused to do. The defense of release from payment set up in the answer is an affirmative defense. It is · sufficient to say that it has not been established by a preponderance of the evidence. Inasmuch as we reach the conclusion that the defendant had failed to establish any defense upon the facts, we do not consider other questions raised during the trial, but not mentioned in the brief. Judgment affirmed. All concur.