C. W. HULL COMPANY, APPELLANT, V. CHARLES A. WESTERFIELD ET AL., APPELLEES.

FILED FEBRUARY 16, 1922.   No. 21751.

1. Contracts: SUFFICIENCY. A contract by one party "to sell and ship" to another party, who agrees "to buy and receive," certain

Illinois coal, which specifies in general terms all the requirements or fixes approximately the number of car-loads of coal, the prices and dates of shipments, is not void for indefiniteness or ambiguity, provided such requirements can be reasonably estimated.

2. ——: ——. A contract for the sale of coal, which gives the buyer the option of having the shipments made either from the Shiloh mine or from the Trenton mine, is not void for lack of mutuality, as the seller has agreed to sell and ship and the buyer has agreed to buy and receive his requirements for the season from either mine.

3. ——: ——. A contract of sale which contains the provision that the buyer "is at liberty to buy other Illinois coal of similar quality, if able to do so at lower prices than those provided in this contract," is not unilateral, but is in the nature of a guaranty by the seller that the prices shall not go below those stated in the contract. The contingency depends, not on the will of the buyer, but on the decline of the market, which is beyond his control; this is an inducement for the buyer to make a seasonal contract and will be enforced.

4. ——: CONSTRUCTION BY PARTIES. The interpretation or construction given contracts by the parties to them, while engaged in their performance before any controversy has arisen, is one of the best indications of their true intent and meaning, and the courts should ordinarily enforce such construction. *Cady v. Travelers Ins. Co.*, 93 Neb. 634.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Brogan, Ellick & Raymond* and *Harvey M. Johnson,* for appellant.

*B. N. Robertson, Stewart, Perry & Stewart* and *L. R. Slonecker,* contra.

Heard before MORRISSEY, C. J., ROSE, ALDRICH and FLANSBURG, JJ., BUTTON and COLBY, District Judges.

COLBY, District Judge.

This was an action brought by appellant in the district court for Douglas county, in equity, to enjoin eight of the appellees, who were retail coal dealers, from prosecuting certain actions at law brought by each of them to re-

cover for the alleged breach by appellant of contracts for the sale and delivery of Illinois coal during the season of 1916-1917. A temporary injunction was granted. The defendants filed separate answers and cross-petitions, setting up their alleged contracts and damages for breach thereof. One Robert Bates, the ninth appellee, intervened for the same purpose.

The equitable grounds alleged by appellant were that appellant was unable to fully perform its contracts with said appellees by reason of transportation disturbances, and that a court of equity should determine the extent to which, under the circumstances, it should have furnished the coal under its contracts with its various customers. The district court entered judgment in favor of each of the defendants and of said Robert Bates, the intervener. The trial court found generally against appellant and in favor of the eight cross-petitioners and the intervener, Robert Bates. From said findings and judgments the plaintiff appeals to this court.

It appears that the only question for this court to consider is the correctness of the findings and judgments of the lower court in favor of said defendants and intervener.

Each of said nine appellees sets forth in their several cross-petitions the execution of a contract to sell and ship on the part of the C. W. Hull Company, and to buy and receive on the part of the several appellees, certain quantities of Illinois coal during the period thereinafter stated, each contract being substantially in the same form and containing the following essential provisions, omitting the names of the purchasers, the quantity of coal agreed to be sold and purchased, and the time of shipment:

"C. W. Hull Company of Omaha, Nebraska, agrees to sell and ship and——agrees to buy and receive:

"Quantity:—entire requirements of Illinois coal (except Franklin county coal) during the period hereinafter stated, the understanding being that he or they, is

or are, at liberty to buy other Illinois coal of similar quality, if able to do so at lower prices than those specified in this contract. (A description of the kind and prices of coal follows.)

"Shipments: As required upon reasonable notice.

"Time: From April—1916, to April 1, 1917."

Then follows a schedule of different grades and qualities of coal at different prices, at different dates. In some of the contracts special conditions, not affecting the questions herein, are written in as follows: "Neither of the parties hereto shall be liable for failure to carry out the provisions of this contract, if prevented by fire, strikes, contingencies of transportation or other causes beyond their control." In the blank space of the several contracts, after the word "quality" and before the words "entire requirements," each appellee had his contract filled out for the amount of coal required, respectively, as follows:

"C. A. Heck—approximately 20 cars."

"Smith Brothers—approximately 20 cars."

"Robert Bates—30 cars."

"George Van Buskirk—10 car-loads."

"Havelock Lumber & Coal Company—approximately 10 cars."

"Daykin Lumber Company—all of their."

"Farmers Elevator Company of Bagley, Iowa—8 to 10 cars."

"Farmers Elevator Company of Scranton, Iowa—10 to 15 cars."

"Charles A. Westerfield—two-thirds of."

The first contention of appellant is that the contract is invalid because the quantity which the company agrees to sell and ship and appellees agree to buy and receive is indefinite, and can be made definite only by the action of the buyers in so far as the contracts provide for furnishing to the appellees their entire requirements without definitely fixing the amount. It appears that the ad-

judicated cases are numerous in sustaining and enforcing contracts like those involved in this case.

In the actions of appellees Heck, Smith Brothers, Bates, Van Buskirk, Havelock Lumber & Coal Company, Farmers Elevator Company of Bagley, Iowa, and the Farmers Elevator Company of Scranton, Iowa, the number of cars is specially mentioned, four of them definitely fixed and in the others approximately in the contracts set out in the respective petitions. In the case of Daykin Lumber Company, the appellant was to sell and ship and the appellee to buy all of its requirements of Illinois coal, and in the case of Charles A. Westerfield two-thirds of his requirements of Illinois coal. The language appears to be sufficiently definite and the language used is not ambiguous or reasonably capable of two interpretations. The appellees were retail coal dealers and the arrangement was to purchase their season's supply of Illinois coal at definite prices, to be shipped upon reasonable notice, within certain limited time. The adjudicated cases are quite uniform in sustaining contracts of this character, and the reasoning in the deciding cases is enlightening and worthy of consideration.

In *Scott v. Stevenson Co.*, 130 Minn. 151, 160, the court, in discussing a contract where a retail merchant purchased his requirements of a certain kind of coats, used this language: "If the buyer has an established business whose requirements may be estimated approximately, the contract is not void either for uncertainty or want of mutuality, but is valid and may be enforced to the extent of the ordinary requirements of such business when carried on and conducted in the manner contemplated by the parties at the time of making such contract."

In the case of *Coal Blast Transportation Co. v. Kansas City Bolt & Nut Co.*, 114 Fed. 77, Judge Sanborn, in the opinion, said: "An accepted offer to furnish or deliver such articles of personal property as shall be needed, required, or consumed by the established business of the acceptor during a limited time is binding and may be

enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer."

Appellant in its contract agreed "to sell and ship" and the purchaser agreed "to buy and receive" in case of appellee Daykin Lumber Company, its entire requirement, and of appellee Westerfield "two-thirds of" his entire requirement. This is much more definite, certain and fixed than in the cases cited.

The second contention on behalf of appellant is that, even where the number of cars is definitely stated in the contract, yet such contract provides that such shipment shall be made from either or both mines, Shiloh or Trenton, at the option of the purchaser, and that until this option is exercised there is no mutuality and a shipment can never be made, and that this feature makes such contract void and unenforceable.

It does not appear to us that this objection to the contract should be given any considerable weight. Because an option is given to the purchaser to purchase a certain kind of coal to be shipped from one mine or a certain kind of coal to be shipped from another mine, when the seller has agreed to ship and sell and the buyer has agreed to receive and buy his requirements or a certain amount of either kind, there does not seem to be any lack of mutuality. These are simply incidents of minor matters like the option to have the goods come over a particular line of railroad, and do not include any of the essentials of a lack of mutuality. The well-considered adjudicated cases from the courts of last resort seem to emphasize the fact that agreements of this character are binding and valid, are mutual, and not unilateral. They are not uncommon between manufacturer and wholesaler or between wholesaler and retailer.

In *Lima Locomotive & Machine Co. v. National Steel Castings Co.*, 155 Fed. 77, the United States circuit court of appeals upheld a contract of similar character.

The third contention of appellant is that each of these contracts is void because of a provision contained that the appellee "is at liberty to buy other Illinois coal of similar quality, if able to do so at lower prices than those provided in this contract." This provision of the contract is plainly in the nature of a guaranty by appellant that the prices of coal shall not go below those mentioned in the contract, and that, if they do, then the buyer is at liberty, unless the seller reduces his prices, to purchase elsewhere at the reduced prices. A large majority of the adjudicated cases hold that this provision does not make a contract unilateral or destroy its mutuality.

In 23 R. C. L. 1270, sec. 86, it is said: "But a provision authorizing one party to cancel the contract on the happening of a certain contingency not dependent purely on the will of such party will not have the effect of rendering the contract invalid for want of mutuality. * * * A provision authorizing the buyer to cancel the contract in case of a decline in the market price of the articles purchased and a refusal of the seller to meet such price does not affect the mutuality of the contract."

The contingency provided for does not depend on the will of the purchaser, but on the contingencies of the market. In *Semon Bache & Co. v. Coppes, Zook & Mutschler Co.*, 35 Ind. App. 351, where a contract contained a provision in substance that the prices of goods sold were guaranteed against decline, and in the event of receiving lower quotations the seller should have the privilege of meeting the same, or else that such contract could be canceled, the court held that the privilege of cancelation was not dependent on the buyer's wish, but on a decline of prices evidenced by the receipt of lower quotations and an election not to meet the decline, and the court, in rendering its opinion, say: "The privilege of cancelation by the appellant of portions of an order and the balance or unexecuted part of the contract was made dependent, not upon the mere wish of the appellant, but upon a further decline of prices, and the election of

the appellant not to meet the decline. Before the appellant could be thus released from further performance, it would be necessary that the appellant should have received lower quotations, a contingency which does not appear to have arisen, the prices having in fact advanced."

Also, in the case of the *Minnesota Lumber Co. v. Whitebreast Coal Co.*, 160 Ill. 85, a coal contract permitting the purchaser to cancel the contract in case it could buy at a lower price was held valid and binding.

This provision in the contracts under consideration in the instant case was simply a stipulation which was incorporated in the contract by appellant to induce appellees to enter into a seasonal contract, and assured them that if coal prices fell appellant would either meet such prices or appellees could buy elsewhere at lower prices. It is a very common agreement made between wholesalers and retailers, and, unless buyers could be protected in this manner, very few term contracts would be made and the retailer would be left to purchase from time to time according to his immediate needs.

In *Maccalum Printing Co. v. Graphite Compendius Co.*, 150 Mo. App. 383, a contract similar to the one in the case at bar was held by the court to be mutual and not to avoid the contract. A portion of the syllabus is as follows: "A contract employing a printer to print an advertising catalogue, which stipulates that, if the price of the printer be no higher than other responsible firms on 'succeeding issues' of the publication, the advertiser will give the work of publishing the 'succeeding issues' to the printer, * * * held to give the printer the right to be awarded the printing of two or more succeeding issues, where his bids for the work are as low as those of other responsible firms."

In *In re Wacker Co.*, 244 Fed. 483, a contract made between a canner of tomatoes and the purchaser contained the following clause: "Prices guaranteed against decline of the following reliable packs of stand-

ard tomatoes to date of shipment." And it was contended that this provision of the contract was uncertain, lacked mutuality, and was unenforceable and void. The court in its opinion say: "In many lines it is necessary, or at all events highly expedient, to contract for goods months before they are to be delivered. Under such circumstances the seller frequently guarantees to protect the buyer against a decline in the price of some leading producer or producers. Many millions of dollars of business are annually done under contracts containing such guarantees. There is nothing immoral in them nor are they contrary to public policy. Business men have use for them, and the courts should sustain them if legally possible."

The authorities cited by appellant regarding indefiniteness of the contract, the exercise of options, or the guaranty of prices, do not apply to the plain, understandable and definite provisions contained in the contracts under consideration. As we have seen, the contracts between the appellant seller and appellee buyers have all the legal requirements of definiteness, mutual consideration and binding obligation. They require the seller to sell and ship and the buyers to buy and receive a reasonably definite quantity of coal of a named kind, within a certain fixed time, and at a certain fixed price, and the seller, in effect, guarantees that the market will not decline, as an inducement for the buyer to make a seasonal contract. The appellees in this case agreed to purchase their requirements of Illinois coal from appellant, specifying particularly what those requirements were, giving the prices and times of delivery and shipment, and this was subject only to the conditional inducement made by the appellant that they might buy Illinois coal elsewhere during the term of the contract, if the same could be obtained at lower prices. This condition, as shown by the record, never arose, but on the contrary the prices of coal were higher, and this rise in prices, rather than the excuses

pleaded and not sustained by the evidence, would seem to be the real cause of the failure of appellant to comply with the terms of the several contracts on its part, and of its earnest contention that such contracts are too indefinite, lack mutuality, and contain conditions which are not enforceable.

The objections to the findings and judgments of the lower court urged in the argument and extensive brief of the appellant do not impress this court as being sufficient under the established principles of law for a reversal of the lower court, and a careful examination of the bill of exceptions and the whole record does not increase the weight of such objections or the cogency of the argument. The record in this case unquestionably shows that appellant never doubted the legality or suggested the illegality of the contracts or questioned appellant's liability to furnish the coal required thereunder to said appellees prior to the beginning of this litigation. Appellant's excuse for failure to deliver was always that it could not get the coal from the mines, due to car shortage. Both over the telephone and by letter appellant admitted that appellees were entitled to the coal called for in their contracts and that appellant would deliver the coal as soon as it could. In a letter to Smith Brothers, appellant says: "We admit that you are entitled to all the coal your contract calls for, and if there is any possible chance to get it we will deliver the coal." There is no question or doubt but that appellant by its acts and admissions during the term of the contract recognized the same as a valid, definite, understandable and mutually binding obligation. This was a practical interpretation of the contract by an interested party at a time when no litigation was pending and, under the law, should be considered binding on such party.

This court in *Cady v. Travelers Ins. Co.*, 93 Neb. 634, say: "The practical interpretation given their contracts by the parties to them while they are engaged in their

performance, and before any controversy has arisen concerning them, is one of the best indications of their true intent, and the courts will ordinarily enforce such construction." To the same effect is *Fullerton v. United States Casualty Co.*, 184 Ia. 219, and *Daily v. Minnick*, 117 Ia. 563. The general rule of law is that, where a party, before trouble has begun, gives a reason for his decision and conduct touching· anything in controversy, he is estopped after litigation has commenced from changing his ground. and putting his conduct on another and different consideration.

In answer to the· Daykin Lumber Company, under date of October 10, 1916, the appellant says: "You are undoubtedly aware cars are' very scarce, but ·our people are doing everything they possibly can to fill our orders without delay. Your order is at the head of the list and will no doubt be shipped within a short time."

To the Havelock Lumber & Coal Company appellant wrote:. "We have a great many orders on our books from dealers with whom we have contracts and we are determined to take care of this business before further orders are taken, regardless of the fact that' there is an unprecedented demand at premium prices."

To C. A. Heck, under date of January 6, 1917, appellant wrote: "There will undoubtedly be some of this coal that we can divert to you and if you will let us know by return mail how many cars you can use between now and March 1st, we will endeavor to see that you get what is due on your contract."

In *Powers v. Bohuslav*, 84 Neb. 179, this court uses the following language: "It is a well-established principle of law that, where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot after litigation has begun change his ground and put his conduct upon another and different consideration. He is not permitted thus to mend his hold."

See, likewise, *First State Bank v. Stephens Bros.*, 74

Neb. 616; *Ballou v. Sherwood*, 32 Neb. 666; *Frenzer v. Dufrene*, 58 Neb. 432; *State v. Board of County Commissioners*, 60 Neb. 566; 21 C. J. 1222, sec. 226, and cases cited.

In an examination of appellant's original petition we find the following language: "The plaintiff alleges that it has, in that manner, complied with each and all its contracts with the said defendants in so far as it was able to do within the terms of its said written contracts." It thus appears that appellant, in addition to the admissions made before suit was begun, in its petition in this case admits these contracts and their validity, and pleads a substantial compliance therewith. Surely appellant should not now be allowed to defeat the rights of appellees on the ground that such contracts are void, invalid and unenforceable.

From the foregoing consideration of the law applicable to this case and the facts contained in the record, this court finds every reason for sustaining, and no reasonable ground for reversing, the proceedings of the trial court.

The several findings and judgments of the district court in favor of the respective appellees should be and hereby are

AFFIRMED.