346

[File No. 6217.]

J. L. KELLY, Respondent, v. L. R. BAIRD, as Receiver of the Menoken Farmers State Bank, a Corporation of Menoken, North Dakota; Melvin Welch, as the Administrator of the Estate of Rollin Welch, Deceased, as Substituted for the said Rollin Welch; and Albin Hedstrom, as Former Deputy Sheriff of Burleigh County, North Dakota, Appellants.

(252 N. D. 70.)

Opinion filed January 5, 1934.

*Zuger & Tillotson,* for appellants.
*L. J. Wehe,* for respondent.

MOELLRING, J.  Plaintiff brings this action to recover damages for the conversion of a certain automobile, concerning which he holds a purchase price contract.  Plaintiff in his complaint sets out the execution and delivery of the contract, also copy of the same, and assignment of the contract to him.  He also alleges that the defendants, with knowledge of his contract rights, made a levy under execution on a

certain judgment, sold the automobile under such execution at public auction to one of the defendants, and thereby appropriated the property, to plaintiff's damage.

To this complaint a demurrer was filed, alleging that the complaint does not state a cause of action against the defendants. The demurrer was overruled, whereupon the defendants interposed separate answers to the complaint. All of the answers are substantially to the same effect, deny that plaintiff had any right or interest in the automobile, and allege that one of the defendants, L. R. Baird as receiver of the Menoken Farmers State Bank, secured a special lien on the property by virtue of a levy under execution on a certain judgment, and that at a sale thereunder he acquired ownership and possession of the property as the highest bidder.

While the action was pending, and on or about March 6, 1930, the defendant Rollin Welch, sheriff, died. Subsequently, on motion of the plaintiff, one Melvin Welch as administrator of the estate of said Rollin Welch, deceased, was substituted as party defendant, and as such administrator answered the complaint.

On stipulation of the parties, the case was tried to the court without a jury. The trial court made findings and order in favor of the plaintiff, for damages, against all of the defendants. Thereafter the defendants made a motion for judgment notwithstanding the findings, or for a new trial. The motion was denied, and judgment was entered on the findings. All of the defendants appeal from the decision and judgment of the trial court, and from the order of the court denying defendants' motion notwithstanding the findings or for a new trial. Insufficiency of the evidence is also included in the specifications of error, and defendants request a review of the entire record.

On this appeal, defendants predicate error: that the court erred in overruling the demurred to the complaint; that the court erred in denying the motion of the defendants for judgment and decision in lieu of a motion for a directed verdict against the plaintiff for a dismissal of the action, made at the close of the plaintiff's case, and also made at the close of all the evidence in the case; that the court erred in denying defendants' motion for judgment notwithstanding the findings, or for a new trial; and that the evidence is insufficient to sustain the findings and judgment.

The material facts in the record disclose that on December 15, 1928, one Louis Olsen purchased of the Copelin Motor Company of Bismarck, North Dakota, the Model A Ford coupe involved in this action, for the consideration of $590, entering into a written contract with the seller, which contract reads as follows:

"Bismarck, N. Dak. 12/15/1928.

"Nov. 1, 1929 after date, without grace, I promise to pay to the order of Copelin Motor Company $590.00 the sum of Five Hundred Ninety and no/100 dollars

for value received, at our office with interest, payable after date at the rate of 9 per cent per annum until paid, having deposited and pledged, as collateral security for the payment of the principal and interest hereof, the following described property: Model A Coupe #695592.

"In case of non-payment of this note at maturity, the owner and holder hereof, or assigns, are hereby authorized to sell, assign and deliver the whole or any part of said property, at public or private sale or broker's board, at his or their option at any time or times thereafter, without demand of payment hereof or notice of intention to sell, or of the time and place of sale, to the undersigned; and, after deducting all costs and expenses of collection, sale and delivery, to apply the residue of the proceeds of such sale or sales to the payment hereof, principal and interest. In case of any surplus, the same shall be paid to the undersigned; and in case of any deficiency, the undersigned shall still remain liable therefor. At any such sale, the then owner and holder hereof shall have the right to become purchaser of all or any part of the property, freed and discharged of any right or equity of redemption. In case of public sale, the same shall be had only after ten days' notice.

"The makers, endorsers and guarantors hereof hereby jointly and severally waive presentation for payment, notice of dishonor, protest and notice of protest.

Witness:                                                    Louis Olsen."

F. A. Copelin

On the reverse side of this instrument, the following notations and indorsements appear:

"File No. 1700
"(Document No. 111,361)
"Payable to J. L. Kelly, Copelin Motor Co.
       "By F. A. Copelin
        "12/20/28—Paid $210.00.
"Louis Olsen
"Filed for record October 5, 1929, at 11 A. M.
"Fred Swenson, Register of Deeds of Burleigh Co., N. D.
         "By Mabel Engeseth, Deputy."

The evidence proves further that part of the consideration passing from Olsen to the Copelin Motor Company was a certain Model T Ford car of the agreed price of $210. This item appears indorsed as a payment on the contract. The possession of the coupe was immediately delivered to Olsen, and was retained and used by him at all times until levied upon under execution.

Subsequently, on June 21, 1929, the defendant L. R. Baird, as Receiver of the Menoken Farmers State Bank, secured a judgment against said Louis Olsen in the district court of Burleigh county, in the sum of $1,924.90. This judgment is founded upon an indebtedness owing from Olsen to Baird, as receiver of said bank. Thereafter and on August 24, 1929, the judgment creditor caused an execution to be issued out of said court on the judgment. On September 4, 1929, the defendant Albin Hedstrom, as deputy sheriff, armed with the execution, went to the farm home of said Louis Olsen, located in the same county, for the purpose of levying upon such personal property of the judgment debtor as he might find. Before he had actually made a levy, or seized any property, he met Olsen, apprised him of the execution, and of his mission. Olsen then informed the deputy sheriff, Hedstrom, that he did not own the Ford coupe, that he bought it of the Copelin Motor Company, had not fully paid for it, and that the Copelin Motor Company had the title to or mortgage on the same to secure payment of the purchase price.

Apparently Hedstrom did not heed the information given, or make further inquiry or investigation, but immediately levied upon and seized the coupe, together with other personal property.

On October 14, 1929, the property so levied upon, including the said automobile, was sold at public auction under the execution, pur-

suant to notice, and the coupe was sold to the judgment creditor as the highest bidder, for the sum of $400.

At the outset we are confronted with the question whether or not plaintiff had a continuing special interest in the coupe, by virtue of the written contract, copy of which is hereinbefore set out in full. Defendants contend that he has no interest, and did not have at the time of the levy made under the execution. They assert that the contract is specifically a pledge only, and that the pledgee's special interest or lien, if any, was lost when the car was delivered into the possession of the pledgor Olsen. On the other hand, plaintiff claims that the contract is a conditional sales contract, or a lien to secure the purchase price of the car, and was so understood and intended by the contracting parties at the time the contract was entered into.

If we regard the transaction as strictly a pledge, then it is significant that the alleged pledging covenants in the contract stand for naught, as the automobile was immediately delivered to the possession of Olsen, upon consummation of the sale, and so intended at the time of the transaction.

Sections 6727 and 6772, Compiled Laws 1913, define a pledge, and possession as an incident. They read as follows:

"Section 6727. What transfers deemed mortgage. Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act is to be deemed a mortgage, except when in the case of personal property, it is accompanied by an actual change of possession in which case it is deemed a pledge."

"Section 6772. Lien dependent on possession. The lien of a pledge is dependent on possession and no pledge is valid until the property pledged is delivered to the pledgee or to a pledge holder as hereinafter prescribed."

These code sections are merely declaratory of the common law. The authorities invariably hold, that to constitute a valid pledge and make it effectual there must be a transfer of the possession of the goods into the hands of the pledgee, and that in order to retain the pledge he must retain the goods. Sykes v. Hannawalt, 5 N. D. 335, 65 N. W. 682; Willard v. Monarch Elevator Co., 10 N. D. 400, 87 N. W. 996; State v. Robb-Lawrence Co., 17 N. D. 257, 115 N. W. 846, 16 L.R.A. (N.S.) 227; Calkins v. Lockwood, 16 Conn. 276, 41 Am. Dec.

143; Franklin Nat. Bank v. Whitehead, 149 Ind. 560, 49 N. E. 592, 39 L.R.A. 725, 63 Am. St. Rep. 302; Hall v. Kansas City Terra Cotta Co. 97 Kan. 103, 154 Pac. 210, L.R.A.1916D, 361, Ann. Cas. 1918D, 605; Tannahill v. Tuttle, 3 Mich. 104, 61 Am. Dec. 480; Palmer v. Mutual L. Ins. Co. 114 Minn. 1, 130 N. W. 250, Ann. Cas. 1912B, 957; First Nat. Bank v. Harkness, 42 W. Va. 156, 24 S. E. 548, 32 L.R.A. 408; Geilfuss v. Corrigan, 95 Wis. 651, 70 N. W. 306, 37 L.R.A. 166, 60 Am. St. Rep. 143.

In the case of Cozart v. Barnes, Circuit Court of Appeals, 4th District, decided March 7, 1917, found in 240 F. page 935, the instrument involved was in the form of a note and contained a clause that there was deposited as collateral security certain tobacco, and that the payees were empowered to sell the tobacco on failure to pay the debt. The court said, in part:

"The instrument in the form of a note given by Moore and Cross to the plaintiffs stated that the tobacco was deposited as collateral security. Whatever may be the law in other states, the Supreme Court of South Carolina in Creech v. Long, 72 S. C. 25, 51 S. E. 614, has held in accordance with the view of the District Court that an agreement that certain property shall stand as security for a debt amounts to a chattel mortgage. The point is made that such an instrument is only an equitable mortgage of the property and that foreclosure would have been more appropriate to enforce the mortgage. The paper not only provides that the tobacco shall stand as collateral security, but it gives 'authority to the payees to sell the same at public or private sale, or otherwise, without notice, at their option, on the non-performance of this promise.' The power thus conferred to sell the property necessarily implied the power to take possession of it for that purpose. The case, therefore, comes expressly under the decision of the court in Moore v. Byrum, 10 S. C. 452, 30 Am. Rep. 58. . . .

"It will be observed that there were no express terms of conveyance, and yet the instrument was held to be a legal mortgage entitling the mortgagee to possession, one of the reasons for the decision being that the paper contained authority to take possession of the property mortgaged upon default in payment."

The similarity of the case at bar with the case cited, is obvious. In both instances the contract is in the form of a note, states that the

property is deposited as collateral security, and gives authority, upon default in payment, to sell the goods at public or private sale, with the implied power to take possession of the goods for such purpose.

Section 7, vol. 1, of Jones on Chattel Mortgages & Conditional Sales, reads as follows: "The fact that there is a delivery of the property may be decisive that the transaction is a pledge; and on the other hand the fact that there is no delivery may be decisive that it was a mortgage and not a pledge. In such case the delivery of possession is an element of the transaction which serves to determine its character, which was left uncertain by the circumstances attending it."

In the case of Willard v. Monarch Elevator Co., supra, a certain lease contract was the subject of the litigation. One of the questions for determination was whether certain provisions in the lease constituted a pledge or a chattel mortgage. In construing the matter, this court said, in part (10 N. D. 404, 87 N. W. 997):

"In this case this essential—the transfer of possession—was wanting, and impossible to be complied with, at the date of the contract or lease. The subject of the special provision—the wheat—was not in existence, and a delivery of possession thereof was not possible. Hence, although the language of this special provision could be construed as creating a pledge or a mortgage, it is nevertheless the duty of the courts to give effect to the intentions of the parties in their negotiations, and such negotiations should not be construed to be meaningless, or of no effect, when their language is reasonably susceptible of a construction that gives effect and force to all the provisions thereof."

In order to ascertain the true character of this contract and its force and effect, it is necessary that we look to and consider the full purpose and intention of the parties at the time of the transaction, thus following the course pursued in the case of Willard v. Monarch Elevator Co., supra.

Did the parties intend to treat the transaction and the contract as a pledge?

The undisputed evidence in the record discovers to us that Olsen purchased the coupe for his own use, immediately went into possession and used it until it was taken from him under the levy. Olsen testifies that it was the intention of the parties that the Copelin Motor Company have title to or lien upon the car, to secure payment of the purchase

price. The testimony of the witness F. A. Copelin, who acted on behalf of the Copelin Motor Company in the transaction, is, in substance, to the same effect. The testimony of the plaintiff, Kelly, fully corroborates the other two witnesses.

The evidence shows further that Kelly, at the time of the transaction, was acting as agent of the Copelin Motor Company and negotiated the sale. The Copelin Motor Company did not close the transaction until Kelly agreed to take over the contract, as the company did not want to carry it. Kelly testified that he purchased the contract, paying the company cash therefor, and that two or three days later a formal assignment was made.

It is apparent, therefore, that whatever we may denominate the agreement, it was the intention of the parties to hypothecate the coupe to assure the payment of the purchase price.

It is elementary that parol evidence is not admissible to change or vary the terms of a written instrument, and it is contended that any evidence of this nature is incompetent. It is well settled, however, that in transactions of this character the intentions of the parties may be shown by extraneous evidence, including parol evidence.

This principle of law became firmly established at an early period, recognizing the necessity of equity's concern in matters of this kind, and is supported by many cases.

Some courts hold that this constitutes a modification of the parol evidence rule, and justify it as an exception. Other courts take an opposite view, and contend that the admission of such evidence does not change or vary the written terms, but merely explains the character of the transaction, and purpose of the instrument.

Hence, bills of sale of personal property, regular on their faces, have been declared to be chattel liens, where there was an oral defeasance, or where the parties intended that the property should stand as security for the payment of a debt.

In Hayworth v. Worthington, 5 Blackf. 361, 35 Am. Dec. 126, decided in May, 1840, the court justified the admission of oral evidence to explain the purpose of the instrument, and, referring to sustaining authorities, stated: "These decisions are based upon the assumption, that the admission of such evidence is necessary for the prevention of fraud."

In 5 Ruling Case Law, under the subject of chattel mortgages, at page 384, § 3 reads, in part, as follows: "As to the form of the instrument, it is generally held, especially in jurisdictions where the distinctions between actions at law and suits in equity have been abolished, that the mere form of an instrument has very little bearing on whether or not it is enforceable as a mortgage. . . In determining whether a particular instrument is a chattel mortgage, the general rule is that the intention of the parties at the time of making the contract must control, and this is to be ascertained from all the language used in the contract, the circumstances attending the transaction and the conduct of the parties." See the following cases: Godman v. Olson, 38 N. W. 360, 165 N. W. 515; Hayworth v. Worthington, 5 Blackf. 361, 35 Am. Dec. 126; Stephens v. Sherrod, 6 Tex. 294, 55 Am. Dec. 776; Weathersly v. Weathersly, 40 Miss. 462, 90 Am. Dec. 344; Herring v. Cannon, 21 S. C. 212, 53 Am. Rep. 661; Taber v. Hamlin, 97 Mass. 489, 93 Am. Dec. 113; Peugh v. Davis, 96 U. S. 332, 24 L. ed. 775; Morgan v. Shinn (McLellan v. Shinn), 15 Wall. 105, 21 L. ed. 87; Merrill v. Ressler, 37 Minn. 82, 33 N. W. 117, 5 Am. St. Rep. 822; Sloan v. Coburn, 26 Neb. 607, 42 N. W. 726, 4 L.R.A. 470; Smith v. Pfluger, 126 Wis. 253, 105 N. W. 476, 2 L.R.A.(N.S.) 783, 110 Am. St. Rep. 911; Rosenbaum v. Foss, 4 S. D. 184, 56 N. W. 114; Walklin v. Horswill, 24 S. D. 191, 123 N. W. 668; Dorman v. Crooks State Bank, 55 S. D. 209, 225 N. W. 661, 64 A.L.R. 614.

In the circumstances disclosed by the evidence, we are of the view that the instrument involved was intended by the parties to create a lien on the property to secure the payment of the purchase price, and that the same is, in legal effect, a chattel mortgage.

The parties themselves have given the transaction between them, and the instrument itself, a construction to the effect that the automobile should stand as security for the satisfaction of the debt, and their practical construction should be respected. Bailey v. Bailey, 53 N. D. 887, 207 N. W. 987; Hedrick v. Stockgrowers' Credit Corp. ante, 61, 250 N. W. 334; Tilton v. Flormann, 22 S. D. 324, 117 N. W. 377; Moore v. Beiseker (C. C. A. 8th) 147 F. 367; Cady v. Travelers Ins. Co. 93 Neb. 634, 142 N. W. 107; C. W. Hull Co. v. Westerfield, 107 Neb. 705, 186 N. W. 992, 29 A.L.R. 105; Birmingham Waterworks Co. v.

Hernandez, 196 Ala. 438, 71 So. 443, L.R.A.1916E, 258, P.U.R. 1916E, 438; Snyder v. Hamilton Nat. Bank, 65 Colo. 24, 172 P. 1069, L.R.A.1918F, 807; Daily v. Minnick, 117 Iowa, 563, 91 N. W. 913, 60 L.R.A. 840; Montgomery Enterprises v. Empire Theatre Co. 204 Ala. 566, 86 So. 880, 19 A.L.R. 987.

The defendants contend further, that even though the plaintiff has a lien by virtue of the contract, he is estopped from asserting the same, for the alleged reasons that the contract contains the signature thereto of only one witness and, therefore, was not a qualified instrument to be filed in the office of the register of deeds; that it does not constitute constructive notice; and that the contract was not filed until after the levy and seizure were made.

Section 6758, Compiled Laws 1913, provides the penalty for failure to file a chattel mortgage with the register of deeds. It reads as follows: "A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith for value unless the original or an authenticated copy thereof is filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated."

The defendant Baird, as receiver of the bank, however, has not brought himself within the provisions of this statute. There is nothing in the evidence to indicate that a failure to file the instrument in any way changed his position or resulted in prejudice on his part. He has not shown that he is a subsequent purchaser or incumbrancer, in good faith, and for value, nor has he shown that he is a creditor in such capacity, as contemplated by the statute. The record is silent as to when the debt, upon which judgment was entered, was created. It is not shown whether it was contracted before or after the execution of the instrument involved in this case. The burden was on the defendants to prove that the judgment creditor comes within the protection of the statute.

This court held in the case of Union Nat. Bank v. Oium, 3 N. D. 193, 54 N. W. 1034, 44 Am. St. Rep. 533, in construing this provision of our law, that an attaching creditor did not acquire a lien superior to that of the mortgagee in an unfiled mortgage, where the debt for which he attaches existed before the giving of the mortgage, and the

creditor has not altered his position to his detriment since the mortgage was given.

It is also indicated in this case that, in order for a creditor to come within its provisions, he must show that he extended credit to the mortgagor, without knowledge of the mortgage, and relying upon the apparent freedom of the property from incumbrances; or, if the debt is a pre-existing debt, that he altered his position to his detriment because of such appearances.

The mere suing out of the execution by the judgment creditor, Baird, could not be construed as "altering his position to his detriment." In the case of Union Nat. Bank v. Oium, supra, the creditor had made a levy under attachment and seized the property of the mortgagor before the mortgage had been placed of record. It was held that such levy and seizure did not confer superior rights over the chattel mortgage, nor did it constitute an estoppel.

The decision in the Oium case was handed down in the early history of this state (1892), has been followed since, and was approved in principle in the comparatively recent case of Hanson v. Blum, 53 N. D. 526, 207 N. W. 144. See also Petrie v. Wyman, 35 N. D. 126, 159 N. W. 616; Hansboro State Bank v. Imperial Elevator Co. 46 N. D. 363, 179 N. W. 669; Moen v. Kilzer Lumber Co. 48 N. D. 420, 184 N. W. 989.

At no instant could the fact that the instrument was not of record affect the rights of Baird, or create any detriment or prejudice. It did not touch upon the debt existing between Olsen and Baird, as receiver of the bank, or the judgment secured thereon. Its non-record character did not influence, in any manner, the suing out of an execution by the judgment creditor, or the actions or attitude of the deputy sheriff when he went forth, armed with the execution, on a levying mission. The record does not show that the judgment creditor, the sheriff, or those under him, had any knowledge of the existence of the automobile, or that Olsen had it in his possession and claimed an interest in it, until the latter informed the levying officer, Hedstrom, of such facts, upon being apprised of the execution.

As we view this case, whether the contract was filed or entitled to be filed, or whether there was constructive notice, are wholly immaterial. A chattel mortgage not properly authenticated for record is,

nevertheless, a valid mortgage between the parties. It is when the rights of a third party intervene that the validity can be questioned, and then only as to such party. See the following cases: J. I. Case Threshing Mach. Co. v. Olson, 10 N. D. 170, 86 N. W. 718; Hellstrom v. First Guaranty Bank, 54 N. D. 322, 209 N. W. 379; Walter A. Wood Mowing & Reaping Mach. Co. v. Lee, 4 S. D. 495, 57 N. W. 238; Peet v. Dakota F. & M. Ins. Co. 7 S. D. 410, 64 N. W. 206; Eastman v. Parkinson, 133 Wis. 375, 113 N. W. 649, 13 L.R.A.(N.S.) 921; 1 Jones, Chattel Mortg. & Conditional Sales, § 102a; 5 R. C. L. 392, § 13; Ann. Cas. 1915D, 304, note.

It is contended further that plaintiff is estopped from asserting any rights under the contract, for the alleged reason that Copelin, as agent of the plaintiff, conceded defendants' rights in the matter by placing a bid or bidding for the automobile, at the time it was auctioned.

It is evident that the sale would have proceeded to a conclusion regardless of whether or not the plaintiff entered a bid for the property. The record is plain that the receiver and the sheriff proceeded with the levy and sale despite the vigorous protests of the plaintiff. Three or four days after the levy, plaintiff appeared in person before the district manager of closed banks, Mr. O'Keeffe, presented his claims to the property and objected to further proceedings. About the same time Mr. Copelin, acting as the agent of the plaintiff, also made similar objections to said district manager. Two days before the sale was held, plaintiff served a formal third party claim with the sheriff. Moreover, on the day of the sale, at the appointed hour, Mr. Wehe, as attorney for Olsen, and Mr. Copelin, as agent of the plaintiff, again made strenuous objections to the deputy sheriff, Hedstrom, and tried to stop the sale. Protestations and warnings were also made audibly to the crowd of potential bidders, some two hundred in number.

It is unnecessary for us to determine whether this last act of bidding at the sale was in the nature of acquiescence or further protest, since it does not appear that the judgment creditor was induced thereby to alter his position in any manner, or suffer any prejudice.

Defendants presented two demurrers to the complaint, both to the same effect, that the complaint does not state facts sufficient to constitute a cause of action against the defendants. The demurrers were overruled, and defendants assign error on such rulings. We have ex-

amined the complaint and find that it alleges, quite fully, all of the essential facts found by the trial court. The trial court ruled correctly.

The defendant Melvin Welch makes the objection that the record does not contain sufficient evidence to warrant a finding that said Melvin Welch is the administrator of the estate of Rollin Welch, deceased. The record shows that on motion the lower court found that he was the administrator of the estate, and ordered his substitution as one of the parties defendant. Moreover, he admits in his answer to the complaint that he is such administrator, and defended the case on that ground. In his answer he alleges, in part: "Now comes the above named Melvin Welch as administrator of the estate of Rollin Welch, deceased, substituted for the said Rollin Welch, and for his separate answer to the plaintiff's complaint herein, shows to the court:" etc.

The trial court correctly determined that he was such administrator and made findings accordingly.

Nor can we sustain the contention of the defendant Hedstrom, that he is not guilty of conversion of the property involved, for the reasons, as he contends, that he honestly and in good faith performed his duties as a public officer with reference to the seizure and sale under execution. He contends that, even though the sheriff may be liable, he as deputy sheriff should not be required to respond in damages, as he was required to carry out the directions of his principal, the sheriff.

It is elementary that there may be conversion, even though the acts were done innocently and in good faith, and in fact such is frequently the case. It is the doing of acts inconsistent with the property rights of another, that makes them actionable.

The record discloses that Hedstrom, as deputy sheriff, made the levy, supervised the sale, and acted as the auctioneer at the sale. He acted with knowledge. Before levy and seizure of the property, he was apprised of the claim of lien under the contract. He also had knowledge that plaintiff had filed a third party claim. Plaintiff's claim having been judicially established, there can be no question as to the liability of both the sheriff and his deputy, Hedstrom. Wilson v. Russell, 4 Dak. 376, 31 N. W. 645; Lee v. Charmley, 20 N. D. 570, 129 N. W. 448, 33 L.R.A.(N.S.) 275; Mariner v. Wasser, 17 N. D. 361, 117 N. W. 343, 138 Am. St. Rep. 714 and note; Guernsey v. Tuthill, 12 S. D. 584, 82 N. W. 190; Coltraine v. McCain, 14 N. C. 308, 24 Am. Dec.

256; Johnson v. Stone, 40 N. H. 197, 77 Am. Dec. 706; Reichman v. Harris (C. C. A. 6th) 252 F. 371, 17 N. C. C. A. 737; Fry v. Taylor, 106 Conn. 387, 138 Atl. 138; McCabe v. Maguire, 182 Mass. 255, 65 N. E. 162; Kiewel v. Tanner, 105 Minn. 50, 117 N. W. 231, 25 L.R.A.(N.S.) 772; 24 R. C. L. 948, § 43; 1 A.L.R. 238, note.

Furthermore, the sheriff has authority to require of the levying creditor an indemnifying undertaking where a third party claim is asserted, for the purpose of protecting himself and those who act under him, and may release the levy if the undertaking is not furnished on demand. Comp. Laws 1913, §§ 7728 and 7550; Matheson v. F. W. Johnson Co. 16 S. D. 347, 92 N. W. 1083.

The record clearly establishes that the acts of the defendants in appropriating the property were tortious, and constituted conversion.

Defendants have assigned as error the amount of damages which the trial court assessed against them, claiming that the same is excessive.

The trial court found that the value of the automobile at the time of conversion was the sum of $490, and ordered judgment for that amount, together with interest thereon at 6 per cent per annum from the date of conversion, which the court determined as October 14, 1929.

The amount of the consideration fixed in the contract of sale, which bears the date of December 15, 1928, is the sum of $590, and draws interest at 9 per cent per annum from that date. A payment of $210 was made thereon December 20, 1928, leaving a remainder of $380 and interest.

In the case of Fargo Loan Agency v. Larson, 53 N. D. 621, 207 N. W. 1003, the plaintiff held a lease contract that contained a provision creating a lien covering certain grain, for the purpose of securing payment of certain indebtedness, which grain was subsequently converted by the defendants. In determining the matter, this court held: "One whose interest in grain which has been converted is special and limited, is entitled to recover such an amount only as will compensate him for the loss of, or damage to, that interest."

Applying the rule thus enunciated to the instant case, the amount of damages "that the plaintiff can recover is the amount unpaid under the contract, principal and interest, at the time of the conversion of the automobile, not exceeding the value of the property converted at

the time of conversion. Plaintiff is also entitled *to recover interest,* as the trial court found, *from the time of the conversion:*

This case is remanded to the district court with directions to modify the judgment to conform with this opinion, and as so modified, the judgment will be affirmed.

BURR, Ch. J., and NUESSLE, BURKE and CHRISTIANSON, JJ., concur.